**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

In re:                                                    CASE NO. 6:19-bk-06589-KSJ

VIA AIRLINES, INC,                                        CHAPTER 11

       Debtor.

_____/

**DISCLOSURE STATEMENT PURSUANT TO 11 U.S.C. § 1125 FOR**
**VIA AIRLINES, INC.**

COUNSEL FOR DEBTOR

JUSTIN M. LUNA, ESQ.
FRANK M. WOLFF, ESQ.
DANIEL A. VELASQUEZ, ESQ.
LATHAM, LUNA, EDEN & BEAUDINE, LLP
111 N. MAGNOLIA AVE., SUITE 1400
ORLANDO, FLORIDA 32801

January 6, 2020

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

In re:                                                      **CASE NO. 6:19-bk-06589-KSJ**

**VIA AIRLINES, INC,**                              **CHAPTER 11**

             **Debtor.**

_____/

**DISCLOSURE STATEMENT PURSUANT TO**
**11 U.S.C. § 1125 FOR VIA AIRLINES, INC.**

**I.    INTRODUCTION AND SUMMARY**

This Disclosure Statement ("Disclosure Statement") is filed pursuant to the requirements of § 1125 of Title 11 of the United States Code (the "Code"). This Disclosure Statement is intended to provide adequate information to enable holders of claims in the above-captioned bankruptcy case (the "Bankruptcy Case") to make informed judgments about the Plan of Reorganization (the "Plan") submitted by **VIA AIRLINES, INC**. ("Debtor" or "VIA"). Debtor is soliciting votes to accept the Plan, the overall purpose of which is to provide for the restructuring of the Debtor's liabilities in a manner designed to maximize recoveries to all stakeholders. VIA believes the Plan provides the best means currently available for its emergence from Chapter 11 and the best recoveries possible for holders of claims and interests against the Debtor and, thus, strongly recommends that you vote to accept the Plan.

**THIS DISCLOSURE STATEMENT AND ITS RELATED DOCUMENTS ARE THE ONLY DOCUMENTS AUTHORIZED BY THE BANKRUPTCY COURT TO BE USED IN CONNECTION WITH THE SOLICITATION OF VOTES TO ACCEPT THE PLAN. THIS INTRODUCTION AND SUMMARY IS QUALIFIED IN ITS ENTIRETY BY THE REMAINING PORTIONS OF THIS DISCLOSURE STATEMENT, AND THIS DISCLOSURE STATEMENT IN TURN IS QUALIFIED, IN ITS ENTIRETY, BY THE PLAN. THE PLAN IS AN INTEGRAL PART OF THIS DISCLOSURE STATEMENT, AND ANY HOLDER OF ANY CLAIM OR INTEREST SHOULD READ AND CONSIDER THE PLAN CAREFULLY IN LIGHT OF THIS DISCLOSURE STATEMENT IN MAKING AN INFORMED**

10392472v1

**JUDGMENT ABOUT THE PLAN. IN THE EVENT OF ANY INCONSISTENCY BETWEEN THIS DISCLOSURE STATEMENT AND THE PLAN, THE PLAN CONTROLS. ALL CAPITALIZED TERMS USED IN THIS DISCLOSURE STATEMENT SHALL HAVE THE DEFINITIONS ASCRIBED TO THEM IN THE PLAN UNLESS OTHERWISE DEFINED HEREIN.**

**NO REPRESENTATION CONCERNING THE DEBTOR IS AUTHORIZED OTHER THAN AS SET FORTH HEREIN. ANY REPRESENTATIONS OR INDUCEMENTS MADE THAT ARE OTHER THAN AS CONTAINED HEREIN SHOULD NOT BE RELIED UPON IN ARRIVING AT A DECISION ABOUT THE PLAN.**

**THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO AUDIT. FOR THAT REASON, AND DUE TO THE COMPLEXITY OF THE DEBTOR'S BUSINESS AND FINANCIAL AFFAIRS, AND THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES, AND PROJECTIONS WITH COMPLETE ACCURACY, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT INACCURACY, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE.**

**THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION, NOR HAS THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED HEREIN. AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, CAUSES OF ACTION, AND OTHER ACTIONS, THE DISCLOSURE STATEMENT SHALL NOT CONSTITUTE, OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.**

As prescribed by the Code and the Federal Rules of Bankruptcy Procedure, the Plan places into "Classes" all Claims asserted against, and equity Interests in, the Debtor. The Plan designates four (4) separate classes of Claims and Interests. As explained in detail below, the Plan generally contemplates paying Holders of Allowed Claims from: (i) the sale of VIA's Part 135 Air Carrier and Operator Certificate; (ii) a cash infusion funded by Wexford Capital, LP ("Wexford") sufficient to pay all allowed administrative claims and all allowed priority claims in full (subject to certain

conditions); (iii) an estimated cash infusion of up to $1.5 million cash to fund the costs and expenses associated with the recertification of Debtor's FAA Part 121 Air Carrier certificate; (iv) a $100,000.00 Exit Facility funded by Wexford into a Litigation Trust; (v) forgiveness of the outstanding DIP Facility (as defined below) and (vi) proceeds derived from the Debtor's pursuit of Causes of Action. The Plan also provides that the Debtor's existing stock and equity interests will be extinguished and will revest with Wexford.

A ballot for voting in favor of or against the Plan ("Ballot") will be mailed along with an order approving this Disclosure Statement. You should use the Ballot that will be sent to you to cast your vote for or against the Plan. You may *not* cast Ballots or vote orally or by facsimile. Whether or not you vote, you will be bound by the terms and treatment set forth in the Plan if the Bankruptcy Court confirms the Plan. The Bankruptcy Court may disallow any vote accepting or rejecting the Plan if the vote is not cast in good faith.

**PLEASE NOTE:**

**THE VOTE OF EACH CREDITOR OR INTEREST HOLDER WITH AN IMPAIRED CLAIM OR INTEREST IS IMPORTANT. TO BE COUNTED, YOUR BALLOT MUST BE <u>RECEIVED</u> AT THE ADDRESS AND BY THE DATE SET FORTH IN THE BALLOT.**

Upon receipt, the Ballots will be tabulated, and the results of the voting will be presented to the Bankruptcy Court for its consideration. As described in greater detail below, the Code prescribes certain requirements for confirmation of a plan. The Bankruptcy Court shall schedule a hearing to consider whether the Debtor has complied with those requirements (the "Confirmation Hearing").

The Code permits a court to confirm a plan even if all Impaired Classes have not voted in favor of a plan. Confirmation of a plan over the objection of a Class is sometimes called "cramdown." As described in greater detail in below, the Debtor has expressly reserved the right to seek cramdown in the event all Impaired Classes do not vote in favor of the Plan.

10392472v1

## II.    DESCRIPTION OF THE DEBTOR'S BUSINESS

Debtor is a United States domestic commercial airline company formed in 1997 which currently has its principal place of business located in Maitland, Florida. Prior to the petition date, Debtor maintained commercial air transport service routes in Texas, Alabama, Mississippi, Florida, Louisiana, Pennsylvania, Oklahoma. VIA also conducted private and public chartered flights for businesses as well as individuals. Debtor's fleet of aircraft includes five (5) ERJ-145 twin-engine regional jets manufactured by Brazilian aerospace company, Embraer, which aircraft are leased from either Elite Business Aircraft, LLC and ViaAC14, LLC, a company owned by Debtor's Chairman, Mr. Amos Vizer, and financed with FNB Equipment Finance. While Debtor has not yet made a final determination, it is likely Debtor will resume flight operations with one or more of its leased aircraft.

VIA is the holder of two (2) Federal Aviation Administration (the "FAA") Air Carrier Certificates (Cert. Nos. GN0A0051 [FAA Part 135 Certificate] and 4VAA005L [FAA Part 121 Certificate]), which authorize the Debtor to conduct air carrier operations within the specifications set forth in 14 C.F.R. part 121 and 135. As of the filing of this Disclosure Statement, VIA no longer conducts air carrier operations under its FAA Part 135 operating certificate, which certificate permits the Debtor to conduct non-scheduled charter and air taxi operations. Following confirmation of its Plan, Debtor intends to pursue a sale of its Part 135 certificate and distribute the proceeds from such sale in accordance with the Plan's terms.

With respect to Debtor's FAA Part 121 certificate, which certificate authorizes VIA to conduct scheduled air service, Debtor intends to obtain recertification with the FAA and resume air carrier operations as a supplemental and domestic regional airline offering charter and scheduled

service throughout the United States. Recertification will be a requirement for the Debtor going forward as it has not conducted aircraft operations since May 26, 2019 and does not currently employ individuals in several specialized operational areas as required by the FAA. Thus, the recertification process will require Debtor to employ qualified individuals to serve in the following key positions: Director of Maintenance, Director of Operations, Chief Pilot, Chief Inspector and Director of Safety, in order to continue flight operations under its FAA Part 121 Operating Certificate. Debtor expects the recertification process will up to three (3) to six (6) months. Although the Debtor does not anticipate there will be any barriers to recertification, there is no guarantee or absolute certainty that the Debtor's FAA Part 121 certificate will be recertified by the FAA.

III.    **EVENTS LEADING TO AND SUBSEQUENT TO FILING BANKRUPTCY**

In late 2018 and early 2019, Debtor experienced operational growing pains most notably tied to a pilot shortage. In this respect, VIA experienced difficulty luring pilots from the attraction of larger aircraft and larger signing bonuses to fly its domestic routes. As a direct result, some routes had to be culled and the frequency of others had to be reduced.

In the spring of 2019, VIA was at a crossroads and in need of a capital infusion in order to maintain its going concern business and good standing with the Federal Aviation Administration ("FAA"). Debtor voluntarily suspended flight operations for a short period of time in May 2019 with the intent to resume operations in 90 days. To support operations while flights were suspended, Debtor entered into an agreement with Ashley Air pursuant to which Ashley Air unconditionally assumed all of VIA's liabilities and committed to pay off all of its creditors, including but not limited to, secured creditors, employees, passengers and critical vendors and business partners. VIA's agreement with Ashley Air would have infused millions of dollars to ensure VIA could resume operations. Instead, Ashley Air failed to perform its obligations under its agreement with VIA. Debtor believes Ashley Air falsely represented its financial wherewithal to satisfy each of the duties

10392472v1

and obligations created pursuant to its agreement with VIA. Ashley Air's failure to comply with its duties and obligations under its agreement with VIA resulted in defaults in payments to Debtor's secured creditors, its landlord, and the Internal Revenue Service. Ashley Air also failed to reimburse employees their unpaid wages or passengers their fees for flights and failed to resume flight operations. As a direct result of Ashley Air's failures, VIA was left with no other choice but to file this Chapter 11 Bankruptcy Case in order to preserve the value of the airline. The air transportation market in the United States has a significant need for a reliable and stable airline, such as one like VIA. In spite of the significant damage caused by Ashley Air's failure to perform, VIA believes that reorganizing is in the best interest of its creditors, customers and the public at large.

B.      <u>Material Events Subsequent to Chapter 11 Filing</u>.

### Court Filings

Shortly after filing its voluntary petition for Chapter 11 relief on October 8, 2019 (the "Petition Date"), the Sanford Airport Authority (the "Authority") filed its Motion for Relief from the Automatic Stay (the "Authority Stay Relief Motion") (Doc. No. 7), seeking an order from the Bankruptcy Court allowing it to complete its eviction of VIA from the premises located at 1722 Hangar Road, Sanford, Florida 32773 (the "Hangar"). On November 18, 2019, the Bankruptcy Court entered an order granting Authority Stay Relief Motion, which order incorporated an agreement between VIA and the Authority pursuant to which the Debtor was permitted to remove its personal property from the Hangar. On December 2, 2019, VIA moved its personal property from the Hangar to a storage facility in compliance with the parties' order.

On October 28, 2019, secured creditor, IberiaBank, filed its Limited Motion for Relief from the Automatic Stay (the "Iberia Stay Relief Motion"), seeking an order from the Bankruptcy Court granting IberiaBank relief from the automatic stay so that it may pursue its rights and remedies under state law. At the initial Chapter 11 status conference conducted in Debtor's case on November

10392472v1

7, 2019, the Bankruptcy Court set the Iberia Stay Relief Motion for trial on January 9, 2020 as the Debtor was in the process of organizing a sale of its equity which would result the potential resolution of IberiaBank's claim in full.

      Also, on October 28, 2019, VIA filed two motions for turnover (Doc. Nos. 29 and 30) seeking an order from the Bankruptcy Court directing Ashley Air, John Ashley Jr. and Precision Aviation Group to turnover all personal property of the Debtor currently in their possession, custody and control. On November 15, 2019, the Bankruptcy Court entered an order directing Ashley Air and John Ashley Jr. to turn over all property of the Debtor in their possession. As of the filing of this Disclosure Statement, the turnover motion pertaining to Precision Aviation Group was not yet resolved by order of the Bankruptcy Court.

      On December 10, 2019, creditors Wells Fargo Trust Company and AvMax Aircraft Leasing, Inc. filed a motion with the Bankruptcy Court seeking relief from the automatic stay to pursue their rights with respect to certain items of personal property in the possession, custody and control of the Debtor (Doc. No. 60). As of the filing of this Disclosure Statement, the motion filed by Wells Fargo and AvMax remains pending and has not yet been resolved by order of the Bankruptcy Court.

## Negotiations with Investors

      Since the petition date, Debtor has been engaged in negotiations with a number of potential investors regarding the sale of an equity stake in Debtor's business. As of the filing of this Disclosure Statement, VIA has elected to receive funding from Wexford Capital, LP ("Wexford" or "Plan Sponsor") to fund its post-petition operations and Plan of Reorganization. Wexford is an SEC-registered investment advisor with over $3 billion of assets under management and an extensive track record of investing in the aviation industry.[1] Under the terms of its agreement with the Debtor,

---

[1] Please visit https://www.wexford.com for additional information regarding the business of Wexford Capital, LP.
10392472v1

Wexford has agreed (subject to satisfaction of certain conditions precedent to confirmation of the Plan and agreement on definitive documentation of the terms set forth in the Plan and Wexford term sheet) to fund a $75,000 debtor-in-possession terms loan credit facility (the "DIP Facility") and VIA's Plan of Reorganization to the extent described below. Debtor believes that its agreement with Wexford will facilitate VIA's successful exit from Chapter 11. A true and correct copy of the Term Sheet agreed to and executed by the Debtor and Wexford is attached hereto as **Exhibit "A"**.

IV.    **THE PLAN**

**THE FOLLOWING SUMMARY IS INTENDED ONLY TO PROVIDE AN OVERVIEW OF THE DEBTOR'S PLAN.  ANY PARTY IN INTEREST CONSIDERING A VOTE ON THE PLAN SHOULD CAREFULLY READ THE PLAN IN ITS ENTIRETY BEFORE MAKING A DETERMINATION TO VOTE IN FAVOR OF OR AGAINST THE PLAN.  THIS SUMMARY IS QUALIFIED IN ITS ENTIRETY BY THE PLAN.**

A.    <u>Overview</u>.

All Claims against the Debtor shall be classified and treated pursuant to the terms of the Plan.  The Plan designates four (4) Classes of Claims and Interests. There are two (2) Classes of Secured Claims; one (1) Class of Unsecured Claims, and one (1) Class of Equity Interests. The Plan provides the respective Holders of Allowed Administrative Claims, Allowed Priority Claims, and Allowed Priority Tax Claims, if any, will be paid in full on the Effective Date or in accordance with the treatment specified herein. The Plan further provides that Holders of Allowed Secured and Unsecured Claims will receive full or partial payment from: (1) the sale of the Debtor's FAA Part 135 Certificate; or (2) the net proceeds recovered by the Litigation Trust (described below).

Wexford has agreed (subject to satisfaction of certain conditions precedent to confirmation of the Plan and agreement on definitive documentation of the terms set forth in the Plan and Wexford term sheet) to sponsor the Plan and provide the following consideration (the "Plan Consideration") in order to effectuate the terms of the Debtor's Plan: (1) forgiveness of any and all

amounts drawn on the DIP Facility (as defined below); (2) cash sufficient to pay the estimated amount of all allowed administrative claims and all allowed priority claims in full (provided that the allowed claim of the Internal Revenue Service does not exceed $100,000.00); (3) an exit facility in the amount of $100,000.00 to the Litigation Trust (the "Exit Facility"); and (4) cash not exceeding $1.5 Million to fund the costs and expenses incurred by the Debtor in connection with the recertification of its FAA Part 121 Air Carrier Operating Certificate. The Plan further contemplates the creation of a Litigation Trust which will be funded with the net cash proceeds from the sale of Debtor's FAA Part 135 Certificate and the $100,000.00 Exit Facility from Wexford as noted above. In exchange for the consideration provided by Wexford, the Plan provides that Wexford or its designated affiliate will receive 100% of the equity interests in the Reorganized Debtor.

      B.     <u>Classification and Treatment of Claims</u>.

          1.     <u>Administrative Claims and Priority Claims</u>.

             a.     <u>Administrative Claims</u>.

In full and final satisfaction, settlement, release and discharge of each Allowed Administrative Claim, Holders of an Allowed Administrative Claim shall be paid in full on the Effective Date or upon such other terms as may be agreed upon by the holder of the claim, the Debtor, and the Plan Sponsor, or, if the Claim does not become Allowed prior to the Effective Date, on the date the Allowed Amount of such claim is determined by Final Order of the Bankruptcy Court. The Allowed Administrative Claims shall be paid from the Administrative Claim Reserve, cash on hand or through pre-petition retainers. Debtor estimates Administrative Claims to be approximately $150,000.00, before deducting pre-petition and post-petition retainers.

             b.     <u>Priority Claims</u>.

               (i)     <u>Allowed Priority Tax Claims</u>.

Except to the extent that the Holder, the Debtor and the Plan Sponsor have agreed or may agree to a different treatment, in full satisfaction of each Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive, in full satisfaction of such Claim, payments equal to the Allowed Amount of such Claim. Allowed Priority Tax Claims shall be paid in full by the Plan Sponsor: (i) on the Effective Date; (ii)  on such dates as a respective Priority Tax Claim becomes Allowed; or (iii) in the event the Allowed Priority Tax Claims exceed $25,000 (in the aggregate), in the Plan Sponsor's sole discretion, equal payments over a five (5) year period sufficient to satisfy the full amount of Allowed Priority Tax Claims, provided that the Plan Sponsor's commitment to fund the Plan shall be contingent on the Priority Tax Claim of the Internal Revenue Service not exceeding $100,000.00. The filed amount of Priority Tax Claims is currently $3,404,904.41. Debtor intends to file an objection to claim with respect to taxes claimed to be owed by the Internal Revenue Service in the amount of $3,399,913.66, which taxes Debtor does not believe it is obligated to pay. As such, Debtor believes the total amount of outstanding priority tax claims are $4,990.75, which amount shall be paid in accordance with the terms set forth in this paragraph.

      (ii)      <u>Allowed Priority Claims</u>.

Except to the extent that the Holder and the Debtor have agreed or may agree to different treatment, in full satisfaction of each Priority Claim, exclusive of Priority Tax Claims under 11 U.S.C. §507(a)(8), each Holder of an Allowed Priority Claim shall be paid in full by the Plan Sponsor: (i) on the Effective Date; (ii) on the dates as a respective Priority Claim becomes Allowed; or (iii) in the Plan Sponsor's sole discretion, equal payments over a five (5) year period sufficient to satisfy the full amount of Allowed Priority Claims.. The anticipated amount of Allowed Priority Claims is $414,118.33.

      (iii)      <u>United States Trustee Fees</u>.

10392472v1

11

All fees required to be paid by 28 U.S.C. § 1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid by the Debtor until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the Effective Date will be paid when due in the ordinary course.

      2.      <u>Secured Claims</u>.

      a.      <u>Class 1 – Allowed Secured Claim of Bank of America, N.A.</u>

Class 1 consists of the Allowed Secured Claim of Bank of America, N.A. ("BOA"). The Class 1 Claim is secured by a first priority lien on the Debtor's Personal Property. In full satisfaction of its Class 1 Allowed Secured Claim, BOA shall receive satisfaction of its Allowed Claim pursuant to one of the following options: (1) receipt of the collateral securing BOA's Class 1 Secured Claim as the indubitable equivalent of its Claim; or (2) $100,000.00 from the sale of Debtor's FAA Part 135 Operating Certificate and 100% of the net proceeds recovered by the Litigation Trust, after payment of administrative claims of the Litigation Trust and the Exit Facility. Under either option, the maximum Distribution to the Class 1 Claimholder shall be equal to the total amount of the Class 1 Claim, and BOA shall not receive Personal Property or a monetary Distribution in an amount greater than the amount of its Allowed Secured Claim. BOA shall inform Debtor of its election to receive treatment under Option (1) or Option (2) concurrently with the submission of its Ballot accepting or rejecting the Plan. Class 1 is Impaired.

      b.      <u>Class 2 – Allowed Secured Claim of IberiaBank</u>

Class 2 consists of the Allowed Secured Claim of IberiaBank ("Iberia"). The Class 2 Claim is secured by a second priority lien on the Debtor's Personal Property. In full satisfaction of its Class 2 Allowed Secured Claim, Iberia shall elect to receive treatment of its Allowed Secured Claim pursuant to one of the following options: (1) Iberia may satisfy the Class 1 Claim of BOA in full on the Effective Date, in which case Iberia will be subrogated to the rights of

10392472v1

BOA and shall be entitled to the treatment of its Allowed Secured Claim in accordance with the treatment specified in Class 1; or (2) in the event Iberia does not elect to satisfy the Class 1 Claims in full, then the Class 2 Claim of Iberia will be paid 100% of the net proceeds recovered from the Litigation Trust after all administrative claims of the Litigation Trust, the Exit Facility, and Class 1 Claims are paid in full.  Under either option, the maximum Distribution to the Class 2 Claimholder shall be equal to the total amount of the Class 2 Claim, and Iberia shall not receive Personal Property or a monetary Distribution in an amount greater than the amount of its Allowed Secured Claim. Iberia shall inform Debtor of its election to receive treatment under Option (1) or Option (2) concurrently with the submission of its Ballot accepting or rejecting the Plan. Class 2 is Impaired.

   3. <u>Unsecured Claims</u>.

    a. <u>Class 3 – Allowed General Unsecured Claims</u>.

     Class 3 consists of all Allowed General Unsecured Claims. In full satisfaction of their Allowed Class 3 Claims, Class 3 Holders shall become beneficiaries of the Litigation Trust and shall receive, on the later of: (i) the Effective Date; (ii) the date all Claim Objections are resolved; or (iii) the date all Causes of Action are fully resolved by Final Order of the Bankruptcy Court, 100% of the net proceeds recovered by the Litigation Trust, paid *pro rata*, after satisfaction in full of (i) all Post-Confirmation Fees and Expenses; (ii) all Allowed Administrative Claims; (iii) Allowed Priority Tax Claims, and (iv) Allowed Class 1 Claims; (v) the Exit Facility; and (vi) Allowed Class 2 Claims. The maximum Distribution to Class 3 Claimholders shall be equal to the total amount of the Class 3 Claims, and no Class 3 Holder shall receive an amount greater than the amount of its Allowed Unsecured Claim. Class 3 is Impaired.

   4. <u>Equity Interests</u>.

    a. <u>Class 4 – Equity Interests in the Debtor</u>.

10392472v1

Class 4 consists of all ownership interests currently issued or authorized in the Debtor. On the Effective Date, all currently issued and outstanding Equity Interests in the Debtor shall be extinguished and 100% of the Interests in the Reorganized Debtor shall be vested in the Plan Sponsor, or its designated affiliate, in return for the Plan Consideration provided by the Plan Sponsor. Class 4 is Impaired.

C.    Means of Implementation.

1.    Plan Consideration provided by the Plan Sponsor.

The Plan will be implemented utilizing funding provided by the Plan Sponsor. Pursuant to the terms of an agreement reached with the Debtor, the Plan Sponsor will provide plan consideration (subject to satisfaction of certain conditions precedent to confirmation of the Plan and the occurrence of the Effective Date) as follows: (1) forgiveness of the amounts drawn on the DIP Facility; (2) cash sufficient to pay the Allowed Administrative Claims up to the amount of the Administrative Claim Reserve and all Allowed Priority Claims in full (subject to the Plan Sponsor's right to pay certain Allowed Priority Claims over a period not to exceed 5 years as permitted under the Bankruptcy Code and subject to the Allowed Priority Tax Claim of the Internal Revenue Service not exceeding $100,000.00); (3) funding of the Exit Facility in the amount of $100,000 to the Litigation Trust pursuant to the same material terms as the DIP Facility (the "Exit Facility"); and (4) additional cash not to exceed $1.5 million to pay the Debtor's/reorganized Debtor's costs and expenses in connection with the recertification of its FAA Part 121 Certificate (collectively the "Plan Consideration"). The Plan Consideration will be distributed in accordance with the terms of the Plan. Prior to the confirmation hearing on the Plan, the Plan Sponsor shall deposit $225,000.00 for the payment of Allowed Administrative Expense Claims administrative expense claims with the Plan Sponsor's counsel (Porter Hedges, LLP), to be held pending confirmation of the Plan (the "Administrative Claim Reserve"). If the Plan is confirmed, the Administrative Claim Reserve shall

be disbursed to the Debtor for the purpose of satisfying all Allowed Administrative Claims. To the extent the Administrative Claim Reserve exceeds the Allowed Administrative Claims, such funds shall be returned to the Plan Sponsor. The Plan Sponsor shall not be required to fund any amounts over and above the Administrative Claim Reserve for the purpose of funding Allowed Administrative Claims under the Plan.

2.    The Litigation Trust.

The Plan contemplates that, upon entry of the Confirmation Order, a Litigation Trust will be formed, which will be funded with the net cash proceeds from the sale of the Debtor's FAA Part 135 Operating Certificate and the Exit Facility, less any amounts paid to the Class 1 Claimholder pursuant to the treatment set forth above in Class 1. The Litigation Trust shall prosecute any Causes of Action the Debtor may have, and shall distribute the net proceeds, after payment of Post-Confirmation Fees and Expenses, recovered from the Causes of Action in accordance with the terms of the Plan. As noted in Debtor's Schedules of Assets, potential Causes of Action include, but are not limited to: (1) a breach of contract claim against Venture Investors Allegiance Group, LLC for $10,324,000.00; (2) a breach of contract claim against Ashley Air, LLC for $15,000,000.00; (3) a breach of contract claim against Pass Charters, LLC for $1,000,000.00; and (4) a breach of contract claim against John Ashley Jr. for $15,000,000.00.

The Litigation Trust shall be overseen by an oversight board which shall initially be comprised of one representative of the holders of Class 1 Claims, Class 2 Claims, and Class 3 Claims (the "Oversight Board"), and a trustee selected by the Oversight Board (the "Trustee"), who may be removed for good cause, upon notice and hearing and after order by the Bankruptcy Court. On the date all Causes of Action are fully resolved by Final Order of the Bankruptcy Court, and after all Payments required to be made by the Litigation Trust are completed, the Oversight Board and Trustee shall have no further obligations under the Plan and shall dissolve

10392472v1

the Litigation Trust and relinquish all powers and authority.

In the event the Class 1 Claims are paid in full, the members of the Oversight Board appointed by the Holder of Class 1 Claims shall be deemed to have resigned from the Oversight Board and shall be replaced with an additional member appointed by the Reorganized Debtor. In the event the Class 2 Claims are paid in full, the member(s) of the Oversight Board appointed by the Holder of Class 2 Claims shall be deemed to have resigned from the Oversight Board and shall be replaced with an additional member appointed by the Holders of Class 3 Claims. If at any time the Class 3 Claims are paid in full, the remaining members of the Oversight Board shall be deemed to have resigned and replaced with members appointed by the Reorganized Debtor. All members of the Oversight Board shall be fiduciaries for the beneficial owners of interests in the Litigation Trust.

The Litigation Trust shall make Payments and Distributions as follows:

- First, to pay the costs and expenses incurred by the Litigation Trust, including without limitation, the costs and expenses of the Trustee and counsel to the Litigation Trust, each of whose compensation shall be on a contingency basis;

- Second, to repay the Exit Facility;

- Third, to make Distributions to creditors as provided in the Plan; and

- Fourth, to the Reorganized Debtor.

5.      Court Approval.

Although full operational control of the Litigation Trust will be vested in the Oversight Board and the Trustee, the Trustee will be required to file and serve notice of any compromise or settlement of any Causes of Action to (i) the Office of the United States Trustee and (ii) any party who provides notice that it wishes to be notified of the actions of the Litigation Trust contemplated herein ("Post Confirmation Notice"). If no objections are filed to a Post Confirmation

Notice after fourteen (14) days, the proposed settlement or compromise shall be deemed approved. If an objection is filed to a proposed settlement or compromise, the Court shall conduct a hearing to determine whether such settlement or compromise should be approved.  A request to receive Post Confirmation Notice shall be filed with the Court and served on the Reorganized Debtor, and the Trustee. The Litigation Trust via the Trustee may retain professionals on such terms as the Trustee deems reasonable, without Bankruptcy Court approval and payments to the professionals for Post-Confirmation Fees and Expenses shall be made only upon fifteen (15) days notice to the Oversight Board (the "Post-Confirmation Fee Statement").  If the Oversight Board objects to any Post-Confirmation Fees and Expenses, it must file an objection with the Bankruptcy Court within fifteen (15) of receipt of the Post-Confirmation Fee Statement.

      6.      <u>Operations of the Litigation Trust</u>.

      The Trustee shall have full and complete authority to perform all acts, execute all documents and make all payments and disbursements of funds directed to be done, executed, performed, paid and disbursed by the provisions of the Plan on behalf of the Litigation Trust.

      The Trustee shall prepare monthly reports regarding Payments and Distributions made by the Litigation Trust and recoveries obtained from Causes of Action, which reports shall be filed with the Bankruptcy Court and served on the Reorganized Debtor.

      The Trustee shall keep an accounting of receipts and disbursements, which shall be open to inspection and review by the Court and creditors of the Debtor (upon reasonable notice, and without unduly interfering with the operations of the Trustee). The Trustee shall provide copies of quarterly reports to creditors who request same in writing and shall be responsible for payment of all U.S. Trustee fees.

      No recourse shall ever be had, directly or indirectly, against the Trustee, his officers or directors, or any employee of the Trustee, by legal or equitable proceedings or by virtue of any

statute or otherwise, or any deed of trust, mortgage, pledge, note, nor upon any promise, contract, instrument, undertaking, obligation, covenant or agreement whatsoever executed by the Trustee under the Plan or by reason of the creation of any indebtedness by the Trustee under this Plan for any purpose authorized by the Plan, it being expressly understood and agreed that all such liabilities, covenants, and agreements of the Trustee, its officers, directors and employees, whether in writing or otherwise, under this Plan shall be enforceable only against, and be satisfied only out of, the Trust Assets, or such part thereof as shall, under the terms of any such agreement, be liable therefor or shall be evidence only of a right of payment out of the income, proceeds and avails of the Trust Assets, as the case may be; every undertaking, contract, covenant, or agreement entered into in writing by the Trustee shall provide expressly against the personal liability of the Trustee.

The Trustee shall not be liable for any act he may do or omit to do hereunder while acting in good faith and in the exercise of his best judgment, and the fact that such act or omission was advised, directed or approved by an attorney acting as attorney for the Trustee, shall be conclusive evidence of such good faith and best judgment. However, this paragraph shall not apply to any gross negligence or willful misconduct by the Trustee or his agents, officers or employees.

7.   Management, Control and Operation of the Reorganized Debtor.

The operations of the Reorganized Debtor will be managed by an executive team employed and installed by the Plan Sponsor. It is contemplated that after confirmation of the Plan,  the Plan Sponsor and Mr. Ami Vizer (the current Chairman of the Debtor's Board), will enter into an employment agreement to retain Mr. Vizer in a managerial role.

D.   Other Provisions.

1.   Leases and Executory Contracts.

To the extent the Debtor rejects any executory contract or unexpired lease prior to the Confirmation Date, any party asserting a Claim pursuant to Section 365 of the Code

10392472v1

arising from the rejection of an executory contract or lease shall file a proof of such Claim within thirty (30) days after the entry of an Order rejecting such contract or lease. Allowed Claims resulting from rejection shall be Class 3 General Unsecured Claims, except as otherwise provided herein. The Debtor shall have until the completion of the hearing on Confirmation to assume or reject any unexpired lease or executory contract. In the event any such unexpired lease or executory contract is not assumed (or subject to a pending motion to assume) by such date, the Plan Sponsor shall have until thirty (30) days after the Confirmation Date to file a notice with the Bankruptcy Court designating which unexpired leases and/or executory contracts will be assumed by the Reorganized Debtor and a proposed cure amount for such unexpired leases and/or executory contracts (the "Assumption Designation Date").  Counterparties to unexpired leases and executory contracts that are designated for assumption by the Assumption Designation Date shall have twenty (20) days from the Assumption Designation Date to object to the assumption and/or proposed cure amount set forth in the Plan Sponsor's/Reorganized Debtor's notice (the "Assumption Objection Deadline").  Any unexpired leases and/or executory contracts that are not subject to a timely filed objection shall be deemed assumed by the Reorganized Debtor, with the cure amount set forth in the Plan Sponsor's/Reorganized Debtor's notice.  Any unexpired leases and/or executory contracts that are not designated for assumption prior to the Assumption Designation Date shall be deemed rejected as of the Confirmation Date. The Debtor's position is that the executory contracts listed on the Schedule of Executory Contracts filed pursuant to Rule 1007 are the only executory contracts to which the Debtor was a party as of the Petition Date.  The Assumption Designation Date may be extended as to any unexpired lease or executory contract by agreement of the Plan Sponsor and the counterparty to such unexpired lease or executory contract.

10392472v1

2.      Procedures For Resolving Disputed Claims.

a.      Prosecution of Objections to Claims.

Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, and except as otherwise provided in the Plan, the Debtor, the Trustee or Reorganized Debtor as the case may be, shall have the exclusive right (but not the obligation) to make and file objections to all Claims.

Pursuant to the Plan, unless another time is set by order of the Bankruptcy Court, all objections to Claims shall be filed with the Bankruptcy Court and served upon the Holders of each of the Claims to which objections are made within 90 days after the Effective Date.

Except as may be specifically set forth in the Plan, nothing in the Plan, the Disclosure Statement, the Confirmation Order, or any order in aid of Confirmation, shall constitute, or be deemed to constitute, a waiver or release of any claim, cause of action, right of setoff, or other legal or equitable defense that either Debtor had immediately prior to the commencement of the Bankruptcy Cases against or with respect to any Claim or Equity Interest, with the exception of claims against any creditor who holds a stipulated and Allowed Claim under the Plan.  Except as set forth in the Plan, upon Confirmation the Litigation Trust shall have, retain, reserve and be entitled to assert all such claims, Causes of Action, rights of setoff and other legal or equitable defenses that the Debtor had immediately prior to the commencement of the Bankruptcy Case as if the Bankruptcy Case had not been commenced.

b.      Estimation of Claims.

Pursuant to the Plan, the Debtor may, at any time, request that the Bankruptcy Court estimate any contingent, disputed, or unliquidated Claim pursuant to § 502(c) of the Code, regardless of whether the Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection; and the Bankruptcy Court will retain jurisdiction

10392472v1

20

to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event the Bankruptcy Court estimates any contingent, disputed, or unliquidated Claim, that estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtor may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.

   c. <u>Cumulative Remedies</u>.

    In accordance with the Plan, all of the aforementioned Claims objections, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court. Until such time as an Administrative Claim, Claim, or Equity Interest becomes an Allowed Claim, such Claim shall be treated as a Disputed Administrative Claim, Disputed Claim, or Disputed Equity Interest for purposes related to allocations, distributions, and voting under the Plan.

   d. <u>Payments and Distributions on Disputed Claims</u>.

    As and when authorized by a Final Order, Disputed Claims that become Allowed Claims shall be paid such that the Holder of such Allowed Claim receives all payments and distributions to which such Holder is entitled under the Plan in order to bring payments to the affected Claimants current with the other participants in the particular Class in question. Except as otherwise provided in the Plan, no partial payments and no partial distributions will be made with respect to a Disputed Claim until the resolution of such dispute by settlement or Final Order. Unless otherwise specifically provided in the Plan, a Creditor who holds both an

Allowed Claim and a Disputed Claim will not receive a distribution until such dispute is resolved by settlement or Final Order.

e.    <u>Allowance of Claims and Interests</u>.

(i)    <u>Disallowance of Claims</u>.

According to the Plan, all Claims held by entities against whom the Debtor has obtained a Final Order establishing liability for a Cause of Action under §§ 542, 543, 522(f), 522(h), 544, 545, 547, 548, 549, or 550 of the Code shall be deemed disallowed pursuant to § 502(d) of the Code, and Holders of such Claims may not vote to accept or reject the Plan, both consequences to be in effect until such time as such causes of action against that entity have been settled or resolved by a Final Order and all sums due the Litigation Trust by that Entity are turned over to the Litigation Trust.

(ii)    <u>Allowance of Claims</u>.

Except as expressly provided in the Plan, no Claim or Equity Interest shall be deemed Allowed by virtue of the Plan, Confirmation, or any Order of the Bankruptcy Court in the Bankruptcy Cases, unless and until such Claim or Equity Interest is deemed Allowed under the Code or the Bankruptcy Court enters a Final Order in the Bankruptcy Cases allowing such Claim or Equity Interest.

f.    <u>Controversy Concerning Impairment</u>.

If a controversy arises as to whether any Claims or Equity Interests or any Class of Claims or Equity Interests are Impaired under the Plan, the Bankruptcy Court, after notice and a hearing, shall determine such controversy before the Confirmation Date. If such controversy is not resolved prior to the Effective Date, the Debtor's interpretation of the Plan shall govern.

3.    <u>Effect of Confirmation</u>.

10392472v1

a.    <u>Authority to Effectuate the Plan</u>.

Upon the entry of the Confirmation Order by the Bankruptcy Court, the Plan provides that all matters provided for under the Plan will be deemed to be authorized and approved without further approval from the Bankruptcy Court.  The Confirmation Order will act as an order modifying the Debtor's by-laws, if so required, such that the provisions of this Plan can be effectuated.  The Reorganized Debtor or Trustee, as the case may be, shall be authorized, without further application to or order of the Bankruptcy Court, to take whatever action is necessary to achieve consummation and carry out the Plan.

b.    <u>Post-Confirmation Status Report</u>.

Pursuant to the Plan, within 90 days of the entry of the Confirmation Order, the Trustee will file a status report with the Bankruptcy Court attaching a detailed accounting of all payments made under the Plan and explaining what progress has been made toward consummation of the confirmed Plan.  The status report will be served on the United States Trustee, and those parties who have requested special notice post-confirmation.  The Bankruptcy Court may schedule subsequent status conferences in its discretion.

## V.    <u>CONFIRMATION</u>

A.    <u>Confirmation Hearing</u>.

Section 1128 of the Code requires the Bankruptcy Court, after notice, to hold a Confirmation Hearing on the Plan at which time any party in interest may be heard in support of or in opposition to Confirmation. The Confirmation Hearing may be adjourned from time to time without further notice except for an announcement to be made at the Confirmation Hearing.  Any objection to Confirmation must be made in writing and filed with the Clerk, and delivered to the following persons, at least seven (7) days prior to Confirmation Hearing:

10392472v1

Debtor:

Via Airlines, Inc.
111 S. Maitland Avenue
Maitland, Florida 32751
C11@flyviaair.com

Counsel for the Debtor:

Justin M. Luna, Esquire
Latham, Luna, Eden & Beaudine, LLP
111 N. Magnolia Ave., Suite 1400
Orlando, Florida 32801
jluna@lathamluna.com

The Plan Sponsor:

Wexford Capital, LP
Wexford Plaza
411 West Putnam Avenue
Greenwich, CT 06830
aamron@wexford.com

Counsel for the Plan Sponsor

Joshua W. Wolfshohl
Porter Hedges LLP
1000 Main Street, 36th Floor
Houston, Texas 77002
jwolfshohl@porterhedges.com

United States Trustee:

George C. Young Federal Building
400 West Washington Street, Suite 1100
Orlando, Florida 32801

B.     Confirmation Standards.

For a plan of reorganization to be confirmed, the Code requires, among other things,

that a plan be proposed in good faith and comply with the applicable provisions of Chapter 11 of the

Code.  Section 1129 of the Code also imposes requirements that at least one class of Impaired

Claims accept the plan, that a plan be in the best interests of creditors, and that a plan be fair and equitable with respect to each class of Claims or Interests which is Impaired under the plan.

The Bankruptcy Court shall confirm a plan only if it finds that all of the requirements enumerated in § 1129 of the Code have been met.  The Debtor believes that the Plan satisfies all of the requirements for Confirmation.

1.    Best Interests Test.

Before the Plan may be confirmed, the Court must find (with certain exceptions) that the Plan provides, with respect to each Class, that each holder of an Allowed Claim or Interest of such Class either (a) has accepted the Plan or (b) will receive or retain under the Plan on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtor was, on the Effective Date, liquidated under Chapter 7 of the Code. To determine what holders of Claims and Equity Interests would receive if the Debtor was liquidated, the Court must determine how the assets and property of the Debtor would be liquidated and distributed in the context of a Chapter 7 liquidation.

The Debtor's costs of liquidation in a Chapter 7 case would include fees payable to a trustee in bankruptcy and to any additional attorneys and professional engaged by such trustee, along with any unpaid expenses incurred by the Debtor during the Chapter 11 Case, including compensation of attorneys and accountants. The additional costs and expenses incurred by a trustee in a Chapter 7 liquidation could be substantial and would decrease the possibility that Unsecured Creditors would receive meaningful distributions. The foregoing types of Claims arising from Chapter 7 administration, and such other Claims as may arise in Chapter 7 or result from the pending Chapter 11 case, would be paid in full from the liquidation proceeds before the balance of those proceeds would be made available to pay Claims of Unsecured Creditors. Liquidation in Chapter 7 might substantially delay the date at which Creditors would receive any Payment.

10392472v1

The Debtor has carefully considered the probably effects of liquidation under Chapter 7 on the ultimate proceeds available for distribution to Creditors and holders of Equity Interests, including the following:

a. the possible costs and expenses of the Chapter 7 trustee or trustees; and

b. the possible substantial increase in Claims, which would rank prior to or on a parity with those of Unsecured Creditors.

For these reasons, the Debtor believes that Creditors will receive less if this case is converted to Chapter 7. Debtor believes that satisfaction of the "Best Interests" test is established by its Liquidation Analysis which will be filed with the Court and served upon all interested parties three weeks prior to the Ballot Date.

2.    Financial Feasibility.

The Code requires, as a condition to Confirmation, that Confirmation of a plan is not likely to be followed by a liquidation, or the need for further reorganization, of the Debtor, unless the liquidation is proposed in the plan. Three weeks prior to the Ballot Date, Debtor will file with the Court, and serve upon all interested parties, a sources and uses analysis to support the financial feasibility of its plan of reorganization.

3.    Acceptance by Impaired Classes.

The Code requires as a condition to Confirmation that each Class of Claims or Interests that is Impaired under the Plan accept such plan, with the exception described in the following section.  A Class of Claims has accepted the Plan if the Plan has been accepted by Creditors that hold at least two-thirds (2/3) in dollar amount and more than one-half (½) in number of the Allowed Claims of such Class who vote to accept or to reject the Plan.

A Class of Interests has accepted the Plan if the Plan has been accepted by holders of Interests that hold at least two-thirds (2/3) in amount of the Allowed Interests of such

10392472v1

26

Class that vote to accept or reject the Plan. Holders of Claims or Interests who fail to vote are not counted as either accepting or rejecting the Plan.

A Class that is not Impaired under the Plan is deemed to have accepted the Plan; solicitation of acceptances with respect to such Class is not required. A Class is Impaired unless (i) the legal, equitable and contractual rights to which the Claim or Interest entitles the holder of such Claim or Interest are not modified; (ii) with respect to Secured Claims, the effect of any default is cured and the original terms of the obligation are reinstated; or (iii) the Plan provides that on the Effective Date the holder of the Claim or Interest receives on account of such claim or interest, Cash equal to the Allowed Amount of such Claim or, with respect to any Interest, any fixed liquidation preference to which the holder is entitled.

4.    <u>Confirmation Without Acceptance by all Impaired Classes: "Cramdown."</u>

The Code contains provisions that enable the Bankruptcy Court to confirm the Plan, even though the Plan has not been accepted by all Impaired Classes, provided that the Plan has been accepted by at least one Impaired Class of Claims. Section 1129(b)(1) of the Code states:

> Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

This section makes clear that the Plan may be confirmed, notwithstanding the failure of an Impaired Class to accept the Plan, so long as the Plan does not discriminate unfairly, and it is fair and equitable with respect to each Class of Claims that is Impaired under, and has not accepted, the Plan.

**THE DEBTOR BELIEVES THAT, IF NECESSARY, IT WILL BE ABLE TO MEET THE STATUTORY STANDARDS SET FORTH IN THE CODE WITH RESPECT TO THE NONCONSENSUAL CONFIRMATION OF THE PLAN AND WILL SEEK SUCH RELIEF.**

C.     <u>Consummation</u>.

The Plan will be consummated, and Payments made if the Plan is Confirmed pursuant to a Final Order of the Bankruptcy Court.  It will not be necessary for the Reorganized Debtor or the Trustee, as the case may be, to await any required regulatory approvals from agencies or departments of the United States to consummate the Plan. The Plan will be implemented pursuant to its provisions and the Code.

D.     <u>Police Power</u>.

Nothing in this Article V shall be deemed to effect, impair, or restrict any federal or state governmental unit from pursuing its police or regulatory enforcement action against any person or entity, other than to recover monetary claims against the Debtor for any act, omission, or event occurring prior to Confirmation Date to the extent such monetary claims are discharged pursuant to § 1141 of the Code.

E.     <u>Revocation and Withdrawal of the Plan</u>.

The Debtor reserves the right to withdraw the Plan and Disclosure Statement at any time before entry of the Confirmation Order.  If (i) the Debtor revokes and withdraws the Plan, (ii) the Confirmation Order is not entered, (iii) the Effective Date does not occur, (iv) the Plan is not substantially consummated, or (v) the Confirmation Order is reversed or revoked, then the Plan shall be deemed null and void.

F.    <u>Modification of Plan</u>.

The Debtor may seek to amend or modify the Plan in accordance with § 1127(b) of the Code to remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.

On or before substantial consummation of the Plan, the Debtor may issue, execute, deliver, or file with the Bankruptcy Court, or record any agreements and other documents, and take any action as may be necessary or appropriate to effectuate, consummate and further evidence the terms and conditions of the Plan.

G.    <u>Federal Income Tax Consequences of the Plan</u>.

1.    <u>Tax Consequences to the Debtor</u>.

Upon confirmation of the Plan, Debtor will be discharged of its outstanding indebtedness to the extent such discharge is allowed by law and such indebtedness is not otherwise satisfied. As a result, the Debtor generally would realize cancellation of indebtedness ("COI") income to the extent that the cash and fair market value of any property paid by the Debtor in return for the discharge of indebtedness is less than the adjusted issue price (plus the amount of any accrued but unpaid interest) of such indebtedness discharged thereby. Under Section 108(a) of the Tax Code (Title 26 of the United States Code), COI income will not be recognized if the COI income occurs in a case brought under the Bankruptcy Code, provided the taxpayer is under the jurisdiction of a court in such case and the COI is granted by the court or is pursuant to a plan approved by the court. Accordingly, because the Debtor is under the jurisdiction of the Bankruptcy Court and the COI (if any) will be pursuant to the Bankruptcy Court's approval of the Plan, the Debtor should not be required to recognize any COI income realized as a result of the implementation of the Plan.

2.    <u>Tax Consequences to Claimholders</u>.

Each holder of a claim is strongly urged to consult its own tax advisor regarding the potential federal state, local or foreign tax consequences regarding the Plan.

## VI.    **CONCLUSION**

If the Plan is not confirmed and consummated, the Debtor believes the most likely alternative is a liquidation of the Debtor under Chapter 7 of the Code.  In a Chapter 7 liquidation, a Chapter 7 trustee would incur significant Administrative Expenses that would be paid before any distribution to creditors. The Debtor believes that liquidation of the Debtor's assets and Causes of Action in a Chapter 7 scenario would dramatically reduce the total amount available to creditors. In a case under Chapter 7 of the Bankruptcy Code, a trustee would be elected or appointed to liquidate the assets of the Debtor for distribution to Creditors in accordance with the priorities established by the Code. The Debtor's analysis of the probable recovery to Creditors and holders of equity interests is set forth in the Liquidation Analysis.

**RESPECTFULLY SUBMITTED** this 6th day of January, 2020 in Orlando, Florida.

/s/ Daniel A. Velasquez
Justin M. Luna, Esq.
Florida Bar No. 0037131
jluna@lathamluna.com
Frank M. Wolff, Esq.
Florida Bar No. 319521
fwolff@lathamluna.com
Daniel A. Velasquez, Esq.
Florida Bar No. 0098158
dvelasquez@lathamluna.com
**LATHAM, LUNA, EDEN & BEAUDINE, LLP**
111 N. Magnolia Ave., Suite 1400
Orlando, Florida 32801
Tel: 407-481-5800
Fax: 407-481-5801
*Attorneys for the Debtor*

10392472v1