**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**In re:**                                              **CASE NO. 6:19-bk-06589-KSJ**

**VIA AIRLINES, INC,**                                  **CHAPTER 11**

                    **Debtor.**
_____/


### PLAN OF REORGANIZATION FOR VIA AIRLINES, INC.




COUNSEL FOR DEBTOR

JUSTIN M. LUNA, ESQ.
FRANK M. WOLFF, ESQ.
DANIEL A. VELASQUEZ, ESQ.
LATHAM, LUNA, EDEN & BEAUDINE, LLP
111 N. MAGNOLIA AVE., SUITE 1400
ORLANDO, FLORIDA 32801




January 6, 2020

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

In re:                                                    **CASE NO. 6:19-bk-06589-KSJ**

**VIA AIRLINES, INC,**                                    **CHAPTER 11**

                    Debtor.
_____/

## PLAN OF REORGANIZATION FOR VIA AIRLINES, INC.

**VIA AIRLINES, INC.** (the "Debtor" or "VIA"), by and through its undersigned counsel, hereby proposes the following Plan of Reorganization (the "Plan") pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

## ARTICLE I – DEFINITIONS

1.      **Administrative Claim** shall mean a Claim for payment of an administrative expense of a kind specified in §§ 503(b) or 507(a)(1) of the Bankruptcy Code, including, without limitation, the actual, necessary costs and expenses incurred after the commencement of the Bankruptcy Case of preserving the Debtor's Estate and operating the Debtor's business, including wages, salaries, or commissions for services, compensation for legal and other services and reimbursement of expenses awarded under §§ 330(a) or 331 of the Code, and all fees and charges assessed against the Estate under Chapter 123 of Title 28, United States Code.

2.      **Administrative Claim Reserve** means the $225,000.00 held by the Plan Sponsors counsel as noted in Article VI, Section A of the Plan.

3.      **Administrative Claims Bar Date** means the date by which all Administrative Claims must be filed with the Bankruptcy Court to be allowed.  The Administrative Claims Bar Date will be established by the Bankruptcy Court as a specific date prior to the Confirmation Date.

10399341v1

4.      **Allowed Administrative Claim** means all or any portion of an Administrative Claim that has been or becomes allowed by Order of the Bankruptcy Court.

5.      **Allowed Amount** shall mean the amount of an Allowed Claim.

6.      **Allowed Claim** means a Claim (a) with respect to which a Proof of Claim has been filed with the Bankruptcy Court in accordance with the provisions of Bankruptcy Code § 501 and Bankruptcy Rule 3001 and within any applicable period of limitation fixed by Rule 3003 or any notice or Final Order of the Bankruptcy Court; (b) deemed filed pursuant to Bankruptcy Code § 1111(a) by virtue of such Claim having been scheduled in the list of Creditors prepared and filed by the Debtor with the Bankruptcy Court pursuant to Bankruptcy Code § 521(1) and Rule 1007(b) and not listed as disputed, contingent, or unliquidated; or (c) deemed an Allowed Claim (including Allowed Secured Claims and Allowed Unsecured Claims) pursuant to the provisions of the Plan or any Final Order of the Bankruptcy Court.  Unless otherwise provided in the Plan or unless deemed or adjudicated an Allowed Claim pursuant to the provisions of the Plan or any Final Order of the Bankruptcy Court, an Allowed Claim shall not include any Claim as to which an objection to or proceeding challenging the allowance thereof has been interposed by the Debtor within any applicable period of limitation fixed by the Plan, by Rule 3003, or any Final Order of the Bankruptcy Court, until such objection or proceeding has been overruled, dismissed, or settled by entry of a Final Order. Notwithstanding the filing of any such objection or the commencement of any such proceeding, a Claim may be temporarily allowed for voting purposes pursuant to the provisions of Rule 3018(a).  Unless otherwise specified in the Plan or any Final Order of the Bankruptcy Court, an Allowed Claim shall not include or accrue interest on the amount of such Claim maturing, incurred otherwise or arising subsequent to the Petition Date.

7.      **Allowed Interest** means an Interest (a) with respect to which a proof of Interest has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Rule 3001 or

10399341v1

a Final Order; or (b) that has been scheduled in the list of equity security holders prepared and filed by the Debtor with the Bankruptcy Court pursuant to Rule 1007(b); and in either case as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Rule 3001 or any Final Order of the Bankruptcy Court.

8.      **Allowed Priority Claim** means a Priority Claim pursuant to §507, exclusive of §507(a)(8) of the Bankruptcy Code; to the extent such Priority Claim is or becomes an Allowed Claim.

9.      **Allowed Priority Tax Claim** means a Priority Claim pursuant to § 507(a)(8) of the Bankruptcy Code; to the extent such Priority Claim is or becomes an Allowed Claim.

10.     **Allowed Secured Claim** means a Secured Claim to the extent provided under § 506 of the Bankruptcy Code and to the extent that neither the lien underlying the Claim is challenged nor the amount of the Claim is challenged as provided herein.

11.     **Allowed Unsecured Claim** means an Unsecured Claim to the extent such Unsecured Claim is or becomes an Allowed Claim.

12.     **Assets** means each and every item of Property of the Estate and every interest of the Debtor and its Estate as of the Effective Date, whether tangible or intangible, legal or equitable, liquidated or unliquidated, whether or not controlled by the Debtor, and includes without limitation: (a) all real and personal property and Cash; (b) all rights, Claims, demands, or Causes of Action, whether arising by statute or common law, and whether arising under the laws of the United States, other countries, or applicable state or local law; (c) any and all amounts owed to the Debtor, including accounts receivable, contract rights, or other rights, including without limitation rights to payment, contribution or distribution from Insiders, whether due prior or subsequent to the Petition Date; (d) all of the Debtor's books, records, and privileges; and (e) all Executory Contracts, and other contracts, agreements, licenses, and leases.

4

13.    **Ballot** means the ballot accompanying the Plan and Disclosure Statement that will be sent to all Creditors entitled to vote on the Plan, on which such Creditors will indicate their vote to accept or reject the Plan.

14.    **Ballot Date** means the date set by the Bankruptcy Court by which all votes for acceptance or rejection of the Plan must be received by the Bankruptcy Court or the balloting agent, as the case may be.

15.    **Bankruptcy Case** means the Debtor's bankruptcy case that is pending before the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, pursuant to Chapter 11 of the Bankruptcy Code, case number 6:19-bk-06589-KSJ.

16.    **Bankruptcy Code** or **Code** means Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., including any amendments thereto, in effect during the Bankruptcy Cases.

17.    **Bankruptcy Court** or **Court** means the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, in which the Bankruptcy Case is pending, and any Court having jurisdiction to hear appeals or certiorari proceedings therefrom.

18.    **Bankruptcy Estate** shall mean the estate created pursuant to § 541 of the Code by the commencement of Debtor's Chapter 11 case and shall include all property of the Estate as defined in such section.

19.    **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure promulgated under Title 28, United States Code, § 2075, including any amendments thereto, as they may be amended from time to time during the Bankruptcy Case.

20.    **Bar Date** means the date fixed by Order of the Bankruptcy Court as the last date for the filing of Claims in this Bankruptcy Case.

21.    **Business Day** means every day except Saturdays, Sundays, federal holidays, and Florida state holidays observed by the Bankruptcy Court.

22.    **Cash** means cash or cash equivalents, including, but not limited to, checks, bank deposits, negotiable instruments, or other similar items.

23.    **Causes of Action** means any and all of the Estate's and the Debtor's actions, Claims, demands, rights, defenses, counterclaims, cross-claims, suits, causes of action, liabilities, obligations, debts, judgments, remedies, damages, recoupments, setoffs, cross claims, counterclaims, third party claims, indemnity claims, contribution claims, and any other claims, whether known or unknown, foreseen or unforeseen, direct or indirect/derivative, choate or inchoate, in law, equity or otherwise, including but not limited to the right to recover transfers voidable or recoverable under Bankruptcy Code §§ 502, 542, 543, 544, 545, 547, 548, 549, 550, 551, and/or 553, and any and all other claims or rights of any value whatsoever, at law or in equity, against any Creditor or other third party, including, without limitation, the claims specifically noted in Debtor's Schedule B, and  any and all claims against any Insiders, members, officers, directors, managers or employees of the Debtor, including any claims for contribution or indemnification for any unauthorized post-petition obligations or transactions and any transaction or obligation incurred by the Debtor not otherwise approved by the Bankruptcy Court; provided, however, that, when used in the Plan, the term Causes of Action does not include any Claims, obligations, suits, judgments, damages, rights, remedies, causes of action, charges, costs, debts, indebtedness, or liabilities released or waived pursuant to the terms of the Plan or by a Final Order of the Bankruptcy Court.  A Cause of Action will not under any circumstances be waived as a result of the failure of the Debtor to describe such Cause of Action with specificity in the Plan or the Disclosure Statement, and nothing in the Plan operates as a release of any of the Causes of Action except as specifically provided in the Plan.

24.    **Claim** means, "claim" as defined in Bankruptcy Code § 101(5).

25.    **Class** means any Class into which Claims or Interests are classified pursuant to the Plan.

26.     **Class 1 Claim, Class 2 Claim, Class 3 Claim,** etc., shall mean the specific Class into which Claims or Interests are classified pursuant to Article II of the Plan.

27.     **Code** shall mean the United States Bankruptcy Code, 11 U.S.C. § 101, et seq., and any amendments thereof.

28.     **Confirmation** means the process leading to confirmation of the Plan, including the entry of the Confirmation Order pursuant to Bankruptcy Code § 1129.

29.     **Confirmation Date** means the date of entry of the Confirmation Order by the Bankruptcy Court on the Court's docket.

30.     **Confirmation Hearing** means the date set by the Bankruptcy Court for the hearing on confirmation of the Plan, as may be continued from time to time.

31.     **Confirmation Order** means the Final Order entered by the Bankruptcy Court confirming the Plan in accordance with the provisions of the Bankruptcy Code.

32.     **Contingent** means, with reference to a Claim, a Claim that has not accrued or is not otherwise payable and the accrual of which or the obligation to make payment on which is dependent upon a future event that may or may not occur.

33.     **Creditor(s)** means "Creditor" as defined in Bankruptcy Code § 101(1).

34.     **Debtor** means VIA AIRLINES, INC.

35.     **Disallowed** means, when referring to a Claim, a Claim or any portion of a Claim that has been disallowed or expunged by a Final Order of a Court.

36.     **Disclosure Statement** means the Disclosure Statement describing the Plan and approved for distribution by the Bankruptcy Court pursuant to Bankruptcy Code § 1125, together with any amendments or modifications thereto.

37.     **Disputed Claim** means every Claim or portion thereof, that is not an Allowed Claim and that has not yet been Disallowed.

38. **Disputed Equity Interest** shall mean an Interest in the Debtor which is not an Allowed Interest and which has not been disallowed by a Final Order or the Bankruptcy Court.

39. **Distribution** means a distribution to the Holders of Allowed Claims.

40. **Effective Date** means the date upon which this Plan becomes effective and the Debtor starts making Distributions as set forth in Article VII .

41. **Estate Assets** shall mean all the assets, property and cash of the Debtor, as defined in section 541 of the Code (excluding assets previously distributed, expended or otherwise disposed of by the Debtor prior to the Confirmation Date not otherwise subject to recovery), wherever located or of whatever type or nature, existing as of the Confirmation Date, including, without limitation, the Causes of Action.

42. **Equity Interest** means any and all issued or authorized equity interests, common stock, stock options and warrants in the Debtor.

43. **Executory Contract** means every unexpired lease to which the Debtor is a party, and every other contract that is subject to being assumed or rejected by the Debtor under Bankruptcy Code § 365, pursuant to the Plan or pursuant to separate motion.

44. **Final Decree** means the Bankruptcy Court's final decree pursuant to Bankruptcy Code § 350(a) and Bankruptcy Rules 3022 and 5009 closing the Bankruptcy Cases after the Estate has been fully administered.

45. **Final Distribution Date** shall mean the date as soon as practicable after the last to occur of: (a) the date that the last Claim becomes an Allowed Claim; or (b) the date upon which all Causes of Action have been liquidated and converted to Cash or abandoned.

46. **Final Order** means an Order or judgment of the Bankruptcy Court that is no longer subject to appeal or *certiorari* proceedings and as to which no appeal or *certiorari* proceeding is pending.

10399341v1

47.      **Holder** means the holder of a Claim or Interest, as applicable.

48.      **Impaired Class** means any Class whose members are Holders of Claims or Interests that are impaired within the meaning of Bankruptcy Code § 1124.

49.      **Insider** means "insider" as defined in Bankruptcy Code § 101(31).

50.      **Interest(s)** means an issued or authorized outstanding membership interest, a warrant or warrants for the issuance of such membership interests, or any other equity instruments in the Debtor.

51.      **Lien** shall mean any mortgage, lien, charge, security interest, encumbrance, or other security device of any kind affecting any asset or property of the Debtor but only to the extent that such interest is recognized as valid by a court of competent jurisdiction if the validity of scope of such interest is challenged by the Debtor, the Liquidating Trustee, or any other party with standing to bring such challenge.

52.      **Litigation Trust** shall mean the Litigation Trust to be established on the Effective Date of the Plan.

53.      **Nonordinary Course Administrative Claim** shall mean an Administrative Claim other than an Ordinary Course Administrative Claim.

54.      **Order** shall mean a determination, decree, adjudication or judgment issued or entered by the Bankruptcy Court.

55.      **Ordinary Course Administrative Claim** shall mean an Administrative Claim incurred in the ordinary course of business of the Debtor; *provided, however*, that any due and unpaid, post-petition payment in respect of rejected, or to be rejected, executory contracts or unexpired leases shall not be an Ordinary Course Administrative Claim.

56.      **Payment** shall mean the Cash to be paid under the Plan to the holders of Allowed Claims.

9

57.    **Person** means "person" as defined in Bankruptcy Code § 101(41).

58.    **Personal Property** means all tangible personal property of the Debtor subject to taxation under Florida law.

59.    **Petition Date** means October 8, 2019, the date on which Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

60.    **Plan** means this Final Chapter 11 Plan of Reorganization, in accordance with the terms hereof or in accordance with the Bankruptcy Code.

61.    **Plan Payments** means payments made by the Debtor pursuant to the terms of the Plan.

62.    **Plan Sponsor** means Wexford Capital LP or an affiliate.

63.    **Post-Confirmation Fees and Expenses** shall mean the fees and expenses of the liquidating trust including any fees and expenses of the liquidating trustee and any professionals employed by the liquidating trust.

64.    **Prepetition** means the period of time preceding the Petition Date and concluding on the Petition Date.

65.    **Priority Claim** means an Unsecured Claim, other than an Administrative Claim, to the extent such Unsecured Claim is entitled to priority in payment under Bankruptcy Code § 507.

66.    **Priority Tax Claim** means every Unsecured Claim or portion thereof that is entitled to priority pursuant to Bankruptcy Code § 507(a)(8).

67.    **Priority Unsecured Claim** means every Unsecured Claim or portion thereof that is not an Administrative Claim or a Priority Tax Claim, and that is entitled to priority under any applicable provision of Bankruptcy Code § 507.

10399341v1

68.    ***Pro Rata*** means proportionate, and when applied to a Claim means the ratio of the consideration distributed on account of an Allowed Claim in a Class to the amount of consideration distributed on account of all Allowed Claims in such Class.

69.    **Professional** means: (i) any professional retained by the Debtor in the Bankruptcy Case pursuant to an order of the Bankruptcy Court in accordance with Bankruptcy Code §§ 327 or 1103; (ii) any attorney or accountant seeking compensation or reimbursement of expenses pursuant to Bankruptcy Code § 503(b); and (iii) any entity whose fees and expenses are subject to approval by the Bankruptcy Court as reasonable pursuant to Bankruptcy Code § 1129(a)(4).

70.    **Professional Fees** means the Administrative Claims for compensation and reimbursement submitted pursuant to Bankruptcy Code §§ 328, 330, 331, or 503(b) of Professionals (i) employed pursuant to an order of the Bankruptcy Court under Bankruptcy Code §§ 327 or 328; or (ii) for whom compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Bankruptcy Code § 503(b) or by other Final Order.

71.    **Proof of Claim** means the form filed in the Bankruptcy Court by a Creditor on which the specifics of a Claim are set forth as required by the Bankruptcy Code and the Bankruptcy Rules.

72.    **Property** shall mean the real property located at 17800 State Road 9, Miami, Florida 33162.

73.    **Property of the Estate** means "property of the estate" as defined in Bankruptcy Code § 541.

74.    **Reorganized Debtor** shall mean the Debtor upon entry of the Confirmation Order.

75.    **Rule** or **Rules** shall mean the Federal Rules of Bankruptcy Procedure, as supplemented by the Local Bankruptcy Rules as adopted by the Bankruptcy Court.

10399341v1

76.     **Schedules** means the schedules of assets and liabilities and any amendments thereto filed by the Debtor with the Bankruptcy Court in accordance with Bankruptcy Code § 521(1).

77.     **Secured Claim** means a Claim secured by a Lien against the Debtor's Assets, or any part thereof, to the extent of the value of any interest in such Assets securing such Claim, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or to the extent of the amount of such Claim subject to setoff in accordance with Bankruptcy Code § 553, in either case as determined pursuant to Bankruptcy Code § 506(a).

78.     **Security Interest** means "security interest" as defined in Bankruptcy Code § 101(51).

79.     **Unclaimed Property** shall mean any cash, or any other Property of the Debtor unclaimed for a period of six (6) months after any Distribution or, in the event that the Distribution was made on the Final Distribution Date, six (6) months after the Final Distribution Date.

80.     **Unimpaired Class** means any Class the members of which are the holders of Claims or Interests, which are not impaired within the meaning of Bankruptcy Code § 1124.

81.     **Unsecured Claim** means every Claim or portion thereof, regardless of the priority of such Claim, which is not a Secured Claim.

82.     **United States Trustee** shall have the meaning ascribed to it in 28 U.S.C. § 581, *et. Seq*. and, as used in the Plan, means the office of the United States Trustee for Region 21 located in the Middle District of Florida, Orlando, Florida.

## ARTICLE II – CLASSIFICATION OF CLAIMS AND INTERESTS

All Claims and Interests treated under Articles IV of the Plan are divided into the following classes, which shall be mutually exclusive:

A.     Class 1 – Allowed Secured Claim of Bank of America, N.A.

Class 1 consists of the Allowed Secured Claim of Bank of America, N.A. The Class 1

Claim is secured by a first priority lien on the Debtor's Personal Property. Class 1 is Impaired.

      B.     <u>Class 2 – Allowed Secured Claim of IberiaBank</u>.

Class 2 consists of the Allowed Secured Claim of IberiaBank. The Class 2 Claim is

secured by a second priority lien on the Debtor's Personal Property. Class 2 is Impaired.

      C.     <u>Class 3 – General Unsecured Claims</u>.

Class 3 consists of the all Allowed Unsecured Claims in the Debtor's Bankruptcy

Case. Class 3 is Impaired.

      D.     <u>Class 4 – Equity Interests</u>.

Class 4 consists of the Equity Interests in the Debtor. Class 4 is Impaired.

## ARTICLE III – ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS.

      A.     <u>Administrative Claims</u>.

In full and final satisfaction, settlement, release and discharge of each Allowed

Administrative Claim, Holders of an Allowed Administrative Claim shall be paid in full on the

Effective Date, or upon such other terms as may be agreed upon by the holder of the claim, the

Debtor and the Plan Sponsor, or, if the Claim does not become Allowed prior to the Effective Date,

on the date the Allowed Amount of such claim is determined by Final Order of the Bankruptcy

Court. The Allowed Administrative Claims shall be paid from the Administrative Claim Reserve,

cash on hand or through pre-petition retainers. Debtor estimates Administrative Claims to be

approximately $150,000.00, before deducting pre-petition and post-petition retainers.

      B.     <u>Priority Claims</u>.

      1.     <u>Allowed Priority Tax Claims</u>.

Except to the extent that the Holder, the Debtor and the Plan Sponsor have

agreed or may agree to a different treatment, in full satisfaction of each Priority Tax Claim, each

Holder of an Allowed Priority Tax Claim shall receive, in full satisfaction of such Claim, payments equal to the Allowed Amount of such Claim. Allowed Priority Tax Claims shall be paid in full by the Plan Sponsor: (i) on the Effective Date; (ii)  on such dates as a respective Priority Tax Claim becomes Allowed; or (iii) in the event the Allowed Priority Tax Claims exceed $25,000 (in the aggregate), in the Plan Sponsor's sole discretion, equal payments over a five (5) year period sufficient to satisfy the full amount of Allowed Priority Tax Claims, provided that the Plan Sponsor's commitment to fund the Plan shall be contingent on the Priority Tax Claim of the Internal Revenue Service not exceeding $100,000.00. The filed amount of Priority Tax Claims is currently $3,404,904.41. Debtor intends to file an objection to claim with respect to taxes claimed to be owed by the Internal Revenue Service in the amount of $3,399,913.66, which taxes Debtor does not believe it is obligated to pay. As such, Debtor believes the total amount of outstanding priority tax claims are $4,990.75, which amount shall be paid in accordance with the terms set forth in this paragraph.

2.    <u>Allowed Priority Claims</u>.

Except to the extent that the Holder and the Debtor have agreed or may agree to different treatment, in full satisfaction of each Priority Claim, exclusive of Priority Tax Claims under 11 U.S.C. §507(a)(8), each Holder of an Allowed Priority Claim shall be paid in full by the Plan Sponsor: (i) on the Effective Date; (ii)  on such dates as a respective Priority Claim becomes Allowed; or (iii) in the Plan Sponsor's sole discretion, equal payments over a five (5) year period sufficient to satisfy the full amount of Allowed Priority Claims. The anticipated amount of Allowed Priority Claims is $414,118.33.

3.    <u>United States Trustee Fees</u>.

All fees required to be paid by 28 U.S.C. § 1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid  by the Debtor until the case is closed, dismissed, or converted to another

10399341v1

chapter of the Code. Any U.S. Trustee Fees owed on or before the Effective Date will be paid when due in the ordinary course.

## ARTICLE IV – TREATMENT OF IMPAIRED CLASSES.

A.     Determination of Allowed Amounts.

Treatment prescribed for Claims and Interests in the following sections of this Article IV shall in all events refer exclusively to the Allowed Amount of each respective Claim.  In the event the Allowed Amount of any Claim is not determined by agreement or otherwise prior to the Effective Date, then the treatment prescribed shall be deemed effective as of the date of the determination of such Claim by agreement or Final Order or as otherwise provided under the Plan.  Notwithstanding Confirmation of the Plan, the Debtor, the Plan Sponsor, the Reorganized Debtor and the Trustee reserve the right to object to any Claim (other than Claims deemed in the Plan to be Allowed Claims) for any reason authorized by applicable bankruptcy and non-bankruptcy law, as well as the right to assert that any such Claim includes amounts subject to equitable subordination or other equitable relief.

Entry of the Confirmation Order shall be deemed to be recognition that the Bankruptcy Court expressly retains jurisdiction as to determination of all such issues pursuant to Article VII, Section H, of this Plan, and other applicable law.

There are four (4) Classes of Claims and Interests.  Treatment for these classes is as follows:

B.     Secured Claims.

1.     Class 1 – Allowed Secured Claim of Bank of America, N.A.

Class 1 consists of the Allowed Secured Claim of Bank of America, N.A. ("BOA"). The Class 1 Claim is secured by a first priority lien on the Debtor's Personal Property. In full satisfaction of its Class 1 Allowed Secured Claim, BOA shall receive satisfaction of its Allowed

10399341v1

Claim pursuant to one of the following options: (1) receipt of the collateral securing BOA's Class 1 Secured Claim as the indubitable equivalent of its Claim; or (2) $100,000.00 from the sale of Debtor's FAA Part 135 Operating Certificate and 100% of the net proceeds recovered by the Litigation Trust, after payment of Allowed Administrative Claims of the Litigation Trust and the Exit Facility. Under either option, the maximum Distribution to the Class 1 Claimholder shall be equal to the total amount of the Class 1 Claim, and BOA shall not receive Personal Property or a monetary Distribution in an amount greater than the amount of its Allowed Secured Claim. BOA shall inform Debtor of its election to receive treatment under Option (1) or Option (2) concurrently with the submission of its Ballot accepting or rejecting the Plan. Class 1 is Impaired.

2.      Class 2 – Allowed Secured Claim of IberiaBank.

Class 2 consists of the Allowed Secured Claim of IberiaBank ("Iberia"). The Class 2 Claim is secured by a second priority lien on the Debtor's Personal Property. In full satisfaction of its Class 2 Allowed Secured Claim, Iberia shall elect to receive treatment of its Allowed Secured Claim pursuant to one of the following options: (1) Iberia may satisfy the Class 1 Claim of BOA in full on the Effective Date, in which case Iberia will be subrogated to the rights of BOA and shall be entitled to the treatment of its Allowed Secured Claim in accordance with the treatment specified in Class 1; or (2) in the event Iberia does not elect to satisfy the Class 1 Claims in full, then the Class 2 Claim of Iberia will be paid 100% of the net proceeds recovered from the Litigation Trust after all Allowed Administrative Claims of the Litigation Trust, the Exit Facility, and Class 1 Claims are paid in full.  Under either option, the maximum Distribution to the Class 2 Claimholder shall be equal to the total amount of the Class 2 Claim, and Iberia shall not receive Personal Property or a monetary Distribution in an amount greater than the amount of its Allowed Secured Claim. Iberia shall inform Debtor of its election to receive treatment under Option (1) or

10399341v1

Option (2) concurrently with the submission of its Ballot accepting or rejecting the Plan. Class 2 is Impaired.

      C.      <u>Unsecured Claims</u>.

      1.      <u>Class 3 – Allowed General Unsecured Claims</u>.

Class 3 consists of all Allowed General Unsecured Claims. In full satisfaction of their Allowed Class 3 Claims, Class 3 Holders shall become beneficiaries of the Litigation Trust and shall receive, on the later of: (i) the Effective Date; (ii) the date all Claim Objections are resolved; or (iii) the date all Causes of Action are fully resolved by Final Order of the Bankruptcy Court, 100% of the net proceeds recovered by the Litigation Trust, paid *pro rata*, after satisfaction in full of (i) all Post-Confirmation Fees and Expenses; (ii) all Allowed Administrative Claims; (iii) Allowed Priority Tax Claims, and (iv) Allowed Class 1 Claims; (v) the Exit Facility; and (vi) Allowed Class 2 Claims. The maximum Distribution to Class 3 Claimholders shall be equal to the total amount of the Class 3 Claims, and no Class 3 Holder shall receive an amount greater than the amount of its Allowed Unsecured Claim. Class 3 is Impaired.

      D.      <u>Equity Interests</u>.

      1.      <u>Class 4 – Equity Interests in the Debtor</u>.

Class 4 consists of all ownership interests currently issued or authorized in the Debtor. On the Effective Date, all currently issued and outstanding Equity Interests in the Debtor shall be extinguished and 100% of the Interests in the Reorganized Debtor shall be vested in the Plan Sponsor, or its designated affiliate, in return for the Plan Consideration provided by the Plan Sponsor. Class 4 is Impaired.

## ARTICLE V – UNEXPIRED LEASES AND EXECUTORY CONTRACTS.

      A.      <u>Assumption or Rejection of Unexpired Leases and Executory Contracts</u>.

10399341v1

To the extent the Debtor rejects any executory contract or unexpired lease prior to the Confirmation Date, any party asserting a Claim pursuant to Section 365 of the Code arising from the rejection of an executory contract or lease shall file a proof of such Claim within thirty (30) days after the entry of an Order rejecting such contract or lease. Allowed Claims resulting from rejection shall be Class 3 General Unsecured Claims, except as otherwise provided herein. The Debtor shall have until the completion of the hearing on Confirmation to assume or reject any unexpired lease or executory contract. In the event any such unexpired lease or executory contract is not assumed (or subject to a pending motion to assume) by such date, the Plan Sponsor shall have until thirty (30) days after the Confirmation Date to file a notice with the Bankruptcy Court designating which unexpired leases and/or executory contracts will be assumed by the Reorganized Debtor and a proposed cure amount for such unexpired leases and/or executory contracts (the "Assumption Designation Date").  Counterparties to unexpired leases and executory contracts that are designated for assumption by the Assumption Designation Date shall have twenty (20) days from the Assumption Designation Date to object to the assumption and/or proposed cure amount set forth in the Plan Sponsor's/Reorganized Debtor's notice (the "Assumption Objection Deadline").  Any unexpired leases and/or executory contracts that are not subject to a timely filed objection shall be deemed assumed by the Reorganized Debtor, with the cure amount set forth in the Plan Sponsor's/Reorganized Debtor's notice.  Any unexpired leases and/or executory contracts that are not designated for assumption prior to the Assumption Designation Date shall be deemed rejected as of the Confirmation Date. The Debtor's position is that the executory contracts listed on the Schedule of Executory Contracts filed pursuant to Rule 1007 are the only executory contracts to which the Debtor was a party as of the Petition Date.  The Assumption Designation Date may be

extended as to any unexpired lease or executory contract by agreement of the Plan Sponsor and the counterparty to such unexpired lease or executory contract.

**ARTICLE VI – MEANS OF IMPLEMENTATION.**

      A.      <u>Plan Consideration provided by the Plan Sponsor</u>.

            The Plan will be implemented utilizing funding provided by the Plan Sponsor. Pursuant to the terms of an agreement reached with the Debtor, the Plan Sponsor will provide plan consideration (subject to satisfaction of certain conditions precedent to confirmation of the Plan and the occurrence of the Effective Date) as follows: (1) forgiveness of the amounts drawn on the DIP Facility; (2) cash sufficient to pay the Allowed Administrative Claims up to the amount of the Administrative Claim Reserve and all Allowed Priority Claims in full (subject to the Plan Sponsor's right to pay certain Allowed Priority Claims over a period not to exceed 5 years as permitted under the Bankruptcy Code and subject to the Allowed Priority Tax Claim of the Internal Revenue Service not exceeding $100,000.00); (3) funding of the Exit Facility in the amount of $100,000 to the Litigation Trust pursuant to the same material terms as the DIP Facility (the "Exit Facility"); and (4) additional cash not to exceed $1.5 million to pay the Debtor's/reorganized Debtor's costs and expenses in connection with the recertification of its FAA Part 121 Certificate (collectively the "Plan Consideration"). The Plan Consideration will be distributed in accordance with the terms of the Plan. Prior to the confirmation hearing on the Plan, the Plan Sponsor shall deposit $225,000.00 for the payment of Allowed Administrative Expense Claims with the Plan Sponsor's counsel (Porter Hedges LLP), to be held pending confirmation of the Plan (the "Administrative Claim Reserve"). If the Plan is confirmed, the Administrative Claim Reserve shall be disbursed to the Debtor for the purpose of satisfying all Allowed Administrative Claims. To the extent the Administrative Claim Reserve exceeds the Allowed Administrative Claims, such funds shall be returned to the Plan Sponsor. The Plan Sponsor shall not be required to fund any amounts over and above the Administrative Claim

Reserve for the purpose of funding Allowed Administrative Claims under the Plan.

      B.      <u>The Litigation Trust</u>.

      The Plan contemplates that, upon entry of the Confirmation Order, a Litigation Trust will be formed, which will be funded with the net cash proceeds from the sale of the Debtor's FAA Part 135 Operating Certificate and the Exit Facility, less any amounts paid to the Class 1 Claimholder pursuant to the treatment set forth above in Class 1. The Litigation Trust shall prosecute any Causes of Action the Debtor may have, and shall distribute the net proceeds, after payment of Post-Confirmation Fees and Expenses, recovered from the Causes of Action in accordance with the terms of the Plan. As noted in Debtor's Schedules of Assets, potential Causes of Action include, but are not limited to: (1) a breach of contract claim against Venture Investors Allegiance Group, LLC for $10,324,000.00; (2) a breach of contract claim against Ashley Air, LLC for $15,000,000.00; (3) a breach of contract claim against Pass Charters, LLC for $1,000,000.00; and (4) a breach of contract claim against John Ashley Jr. for $15,000,000.00.

      The Litigation Trust shall be overseen by an oversight board which shall initially be comprised of one representative of the holders of Class 1 Claims, Class 2 Claims, and Class 3 Claims (the "Oversight Board"), and a trustee selected by the Oversight Board (the "Trustee"), who may be removed for good cause, upon notice and hearing and after order by the Bankruptcy Court. On the date all Causes of Action are fully resolved by Final Order of the Bankruptcy Court, and after all Payments required to be made by the Litigation Trust are completed, the Oversight Board and Trustee shall have no further obligations under the Plan and shall dissolve the Litigation Trust and relinquish all powers and authority.

      In the event the Class 1 Claims are paid in full, the members of the Oversight Board appointed by the Holder of Class 1 Claims shall be deemed to have resigned from the Oversight Board and shall be replaced with an additional member appointed by the Reorganized Debtor. In the

event the Class 2 Claims are paid in full, the member(s) of the Oversight Board appointed by the Holder of Class 2 Claims shall be deemed to have resigned from the Oversight Board and shall be replaced with an additional members appointed by the Holders of Class 3 Claims. If at any time the Class 3 Claims are paid in full, the remaining members of the Oversight Board shall be deemed to have resigned and replaced with members appointed by the Reorganized Debtor. All members of the Oversight Board shall be fiduciaries for the beneficial owners of interests in the Litigation Trust.

The Litigation Trust shall make Payments and Distributions as follows:

- First, to pay the costs and expenses incurred by the Litigation Trust, including without limitation, the costs and expenses of the Trustee and counsel to the Litigation Trust, each of whose compensation shall be on a contingency basis;

- Second, to repay the Exit Facility;

- Third, to make Distributions to creditors as provided in the Plan; and

- Fourth, to the Reorganized Debtor.

C.    Court Approval.

Although full operational control of the Litigation Trust will be vested in the Oversight Board and the Trustee, the Trustee will be required to file and serve notice of any compromise or settlement of any Causes of Action to (i) the Office of the United States Trustee and (ii) any party who provides notice that it wishes to be notified of the actions of the Litigation Trust contemplated herein ("Post Confirmation Notice"). If no objections are filed to a Post Confirmation Notice after fourteen (14) days, the proposed settlement or compromise shall be deemed approved. If an objection is filed to a proposed settlement or compromise, the Court shall conduct a hearing to determine whether such settlement or compromise should be approved.  A request to receive Post Confirmation Notice shall be filed with the Court and served on the Reorganized Debtor, and the Trustee. The Litigation Trust via the Trustee may retain professionals on such terms as the Trustee

21

deems reasonable, without Bankruptcy Court approval and payments to the professionals for Post-Confirmation Fees and Expenses shall be made only upon fifteen (15) days notice to the Oversight Board (the "Post-Confirmation Fee Statement").  If the Oversight Board objects to any Post-Confirmation Fees and Expenses, it must file an objection with the Bankruptcy Court within fifteen (15) of receipt of the Post-Confirmation Fee Statement.

      D.    <u>Operations of the Litigation Trust</u>.

      The Trustee shall have full and complete authority to perform all acts, execute all documents and make all payments and disbursements of funds directed to be done, executed, performed, paid and disbursed by the provisions of the Plan on behalf of the Litigation Trust.

      The Trustee shall prepare monthly reports regarding Payments and Distributions made by the Litigation Trust and recoveries obtained from Causes of Action, which reports shall be filed with the Bankruptcy Court and served on the Reorganized Debtor.

      The Trustee shall keep an accounting of receipts and disbursements, which shall be open to inspection and review by the Court and creditors of the Debtor (upon reasonable notice, and without unduly interfering with the operations of the Trustee). The Trustee shall provide copies of quarterly reports to creditors who request same in writing and shall be responsible for payment of all U.S. Trustee fees.

      No recourse shall ever be had, directly or indirectly, against the Trustee, his officers or directors, or any employee of the Trustee, by legal or equitable proceedings or by virtue of any statute or otherwise, or any deed of trust, mortgage, pledge, note, nor upon any promise, contract, instrument, undertaking, obligation, covenant or agreement whatsoever executed by the Trustee under the Plan or by reason of the creation of any indebtedness by the Trustee under this Plan for any purpose authorized by the Plan, it being expressly understood and agreed that all such liabilities, covenants, and agreements of the Trustee, its officers, directors and employees, whether in writing or

22

otherwise, under this Plan shall be enforceable only against, and be satisfied only out of, the Trust Assets, or such part thereof as shall, under the terms of any such agreement, be liable therefor or shall be evidence only of a right of payment out of the income, proceeds and avails of the Trust Assets, as the case may be; every undertaking, contract, covenant, or agreement entered into in writing by the Trustee shall provide expressly against the personal liability of the Trustee.

The Trustee shall not be liable for any act he may do or omit to do hereunder while acting in good faith and in the exercise of his best judgment, and the fact that such act or omission was advised, directed or approved by an attorney acting as attorney for the Trustee, shall be conclusive evidence of such good faith and best judgment. However, this paragraph shall not apply to any gross negligence or willful misconduct by the Trustee or his agents, officers or employees.

E.    Management and Control and Operation of the Reorganized Debtor.

The operations of the Reorganized Debtor will be managed by an executive team employed and installed by the Plan Sponsor. It is contemplated that after confirmation of the Plan, the Plan Sponsor and Mr. Ami Vizer (the current Chairman of the Debtor's Board), will enter into an employment agreement to retain Mr. Vizer in a managerial role.

F.    Procedures For Resolving Disputed Claims.

1.    Prosecution of Objections to Claims.

Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, and except as otherwise provided in the Plan, the Debtor, the Trustee or Reorganized Debtor as the case may be, shall have the exclusive right (but not the obligation) to make and file objections to all Claims.

Pursuant to the Plan, unless another time is set by order of the Bankruptcy Court, all objections to Claims shall be filed with the Bankruptcy Court and served upon the Holders of each of the Claims to which objections are made within 90 days after the Effective Date.

10399341v1

Except as may be specifically set forth in the Plan, nothing in the Plan, the Disclosure Statement, the Confirmation Order, or any order in aid of Confirmation, shall constitute, or be deemed to constitute, a waiver or release of any claim, cause of action, right of setoff, or other legal or equitable defense that either Debtor had immediately prior to the commencement of the Bankruptcy Cases against or with respect to any Claim or Equity Interest, with the exception of claims against any creditor who holds a stipulated and Allowed Claim under the Plan.  Except as set forth in the Plan, upon Confirmation the Litigation Trust shall have, retain, reserve and be entitled to assert all such claims, Causes of Action, rights of setoff and other legal or equitable defenses that the Debtor had immediately prior to the commencement of the Bankruptcy Case as if the Bankruptcy Case had not been commenced.

        2.    <u>Estimation of Claims</u>.

Pursuant to the Plan, the Debtor may, at any time, request that the Bankruptcy Court estimate any contingent, disputed, or unliquidated Claim pursuant to § 502(c) of the Code, regardless of whether the Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection; and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection.  In the event the Bankruptcy Court estimates any contingent, disputed, or unliquidated Claim, that estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Debtor may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.

10399341v1

3.      Cumulative Remedies.

In accordance with the Plan, all of the aforementioned Claims objections, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court. Until such time as an Administrative Claim, Claim, or Equity Interest becomes an Allowed Claim, such Claim shall be treated as a Disputed Administrative Claim, Disputed Claim, or Disputed Equity Interest for purposes related to allocations, distributions, and voting under the Plan.

4.      Payments and Distributions on Disputed Claims.

As and when authorized by a Final Order, Disputed Claims that become Allowed Claims shall be paid such that the Holder of such Allowed Claim receives all payments and distributions to which such Holder is entitled under the Plan in order to bring payments to the affected Claimants current with the other participants in the particular Class in question. Except as otherwise provided in the Plan, no partial payments and no partial distributions will be made with respect to a Disputed Claim until the resolution of such dispute by settlement or Final Order. Unless otherwise specifically provided in the Plan, a Creditor who holds both an Allowed Claim and a Disputed Claim will not receive a distribution until such dispute is resolved by settlement or Final Order.

5.      Allowance of Claims and Interests.

(i)      Disallowance of Claims.

According to the Plan, all Claims held by entities against whom the Debtor has obtained a Final Order establishing liability for a Cause of Action under §§ 542, 543, 522(f), 522(h), 544, 545, 547, 548, 549, or 550 of the Code shall be deemed disallowed pursuant to

25

§ 502(d) of the Code, and Holders of such Claims may not vote to accept or reject the Plan, both consequences to be in effect until such time as such causes of action against that entity have been settled or resolved by a Final Order and all sums due the Litigation Trust by that Entity are turned over to the Litigation Trust.

        (ii)        <u>Allowance of Claims</u>.

Except as expressly provided in the Plan, no Claim or Equity Interest shall be deemed Allowed by virtue of the Plan, Confirmation, or any Order of the Bankruptcy Court in the Bankruptcy Cases, unless and until such Claim or Equity Interest is deemed Allowed under the Code or the Bankruptcy Court enters a Final Order in the Bankruptcy Cases allowing such Claim or Equity Interest

        6.        <u>Controversy Concerning Impairment</u>.

If a controversy arises as to whether any Claims or Equity Interests or any Class of Claims or Equity Interests are Impaired under the Plan, the Bankruptcy Court, after notice and a hearing, shall determine such controversy before the Confirmation Date.  If such controversy is not resolved prior to the Effective Date, the Debtor's interpretation of the Plan shall govern.

**<u>ARTICLE VII – MISCELLANEOUS</u>.**

        A.        <u>Authority to Effectuate the Plan</u>.

Upon the entry of the Confirmation Order by the Bankruptcy Court, the Plan provides that all matters provided for under the Plan will be deemed to be authorized and approved without further approval from the Bankruptcy Court.  The Confirmation Order will act as an order modifying the Debtor's by-laws, if so required, such that the provisions of this Plan can be effectuated. The Reorganized Debtor or Trustee, as the case may be, shall be authorized, without

10399341v1

further application to or order of the Bankruptcy Court, to take whatever action is necessary to achieve consummation and carry out the Plan.

        B.      <u>Post-Confirmation Status Report</u>.

        Pursuant to the Plan, within 90 days of the entry of the Confirmation Order, the Trustee will file a status report with the Bankruptcy Court attaching a detailed accounting of all payments made under the Plan and explaining what progress has been made toward consummation of the confirmed Plan. The status report will be served on the United States Trustee, and those parties who have requested special notice post-confirmation. The Bankruptcy Court may schedule subsequent status conferences in its discretion.

        C.      <u>Preservation, Prosecution, and Defense of Causes of Action</u>.

        Except as set forth herein, upon Confirmation, the Litigation Trust shall have, retain, reserve and be entitled to assert all such claims, Causes of Action, including all pending adversary proceedings, whether or not such causes of action have been commenced as of the Effective Date, and shall be substituted as the real party-in-interest in any such actions commenced by or against the Debtor, the Bankruptcy Estate, or the Committee. The Litigation Trust shall prosecute or defend, as appropriate, such actions through final judgment, any appeals deemed necessary and appropriate by the Litigation Trust and collection; provided, however, that the Trustee shall be authorized at any point in any litigation (a) to enter into such settlements as the Litigation Trust deems to be in the best interest of creditors, subject to Bankruptcy Court approval after notice and a hearing in accordance with Bankruptcy Rule 9019; or (b) to abandon, dismiss and/or decide not to prosecute any such litigation if the Litigation Trust deems such action to be in the best interest of creditors without Bankruptcy Court or other approval.

D.      Conditions to Effectiveness.

The Effective Date shall not occur until the later of: (i) the entry of the Confirmation Order by the Bankruptcy Court in form and content acceptable to the Debtor and the Plan Sponsor and after the expiration of the appeal period with respect to the Confirmation Order without the filing of a notice of appeal of such Order; and (ii) entry of a final order adjudicating the Priority Claim of the Internal Revenue Service in an amount that is less than $100,000.00; *provided*, *however*, that, if an appeal of the Confirmation Order is filed but no stay is granted in connection with the appeal, the Debtor may in writing elect to permit the Effective Date to occur notwithstanding the pendency of the appeal. Provided the conditions set forth herein have been met, the Effective Date shall automatically occur without further order of the Bankruptcy Court.

E.      Police Power.

Nothing in this Article VII shall be deemed to effect, impair, or restrict any federal or state governmental unit from pursuing its police or regulatory enforcement action against any person or entity, other than to recover monetary claims against the Debtor for any act, omission, or event occurring prior to Confirmation Date to the extent such monetary claims are discharged pursuant to § 1141 of the Code.

F.      Revocation and Withdrawal of this Plan.

The Debtor reserves the right to withdraw this Plan and Disclosure Statement at any time before entry of the Confirmation Order.  If (i) the Debtor revokes and withdraws this Plan, (ii) the Confirmation Order is not entered, (iii) the Effective Date does not occur, (iv) this Plan is not substantially consummated, or (v) the Confirmation Order is reversed or revoked, then this Plan shall be deemed null and void.

10399341v1

G.    Modification of Plan.

The Debtor may seek to amend or modify the Plan in accordance with § 1127(b) of the Code to remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.

On or before substantial consummation of the Plan, the Debtor may issue, execute, deliver, or file with the Bankruptcy Court, or record any agreements and other documents, and take any action as may be necessary or appropriate to effectuate, consummate and further evidence the terms and conditions of the Plan.

H.    Retention of Jurisdiction.

After the Effective Date, the Reorganized Debtor and the Litigation Trust will be free to perform all functions assigned to it herein without approval of the Bankruptcy Court, except as specifically set forth herein. The itemization below is in no way meant to limit, restrict, or circumscribe the inherent jurisdictional authority of the Bankruptcy Court. Confirmation of the Plan acts as consent of the parties to agree to the Bankruptcy Court's ability to enter binding final judgments and rulings as the Bankruptcy Court will continue to retain jurisdiction in this Bankruptcy Case to determine or take the following actions:

1.    All objections to the allowance of Claims and Interests and the compromise of Claims;

2.    All applications for allowance of compensation and reimbursement of out-of-pocket expenses of professionals retained in Debtor's case by Order of the Bankruptcy Court to the extent that such compensation and out-of-pocket expenses relate to services performed before the Confirmation Date; provided, however, that fees of professionals for services rendered after the Effective Date may be paid by the Litigation Trust pursuant to Article VI, section D(2) of the Plan.

10399341v1

3.      Any adversary proceedings or contested matters brought by the Debtor or the Liquidating Trustee (the "Causes of Action"), the proceedings then pending or thereafter brought pursuant to §§ 544, 545, 547, 548, 549, and 550 of the Code, or other proceedings calculated to generate payments to Holders of Allowed Class 3 Claims;

4.      All controversies and disputes arising under or in connection with the Plan;

5.      The enforcement and interpretation of the provisions of the Plan;

6.      To issue such orders in aid of execution and consummation of the Plan as may be necessary and appropriate;

7.      Any motion to modify the Plan in accordance with Code § 1127, or to correct any defect, cure any omission, or reconcile any inconsistency in the Plan, Disclosure Statement, or any Confirmation Order as may be necessary to carry out the purposes of the Plan;

8.      All Claims arising from the rejection of any executory contract or lease;

9.      Such other matters as may be provided for in the Code or the Plan;

10.     To protect the Property of the Estate from adverse claims or interference inconsistent with the Plan;

11.     To ensure that Distributions are accomplished as provided herein and to resolve any dispute concerning the right of any person to a Distribution hereunder, applicable law or under a contract or agreement; and

12.     To hear and determine any action or controversy by or against the Liquidating Trust.

I.      <u>Headings</u>.

Article, Section, and Paragraph headings used herein are for convenience only and shall not affect the interpretation or construction of any provision of this Plan.

10399341v1

J.      <u>Confirmation Without Acceptance by all Impaired Classes: "Cramdown."</u>

The Code contains provisions that enable the Bankruptcy Court to confirm the Plan, even though the Plan has not been accepted by all Impaired Classes, provided that the Plan has been accepted by at least one Impaired Class of Claims.  Section 1129(b)(1) of the Code states:

Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

This section makes clear that the Plan may be confirmed, notwithstanding the failure of an Impaired Class to accept the Plan, so long as the Plan does not discriminate unfairly, and it is fair and equitable with respect to each Class of Claims that is Impaired under, and has not accepted, the Plan.

**THE DEBTOR BELIEVES THAT, IF NECESSARY, IT WILL BE ABLE TO MEET THE STATUTORY STANDARDS SET FORTH IN THE CODE WITH RESPECT TO THE NONCONSENSUAL CONFIRMATION OF THE PLAN AND WILL SEEK SUCH RELIEF.**

K.      <u>Notices</u>.

All notices required or permitted to be made in accordance with the Plan shall be in writing and shall be delivered personally or by facsimile transmission or mailed by United States Mail to the following:

Debtor:

Via Airlines, Inc.
111 S. Maitland Avenue
Maitland, Florida 32751
C11@flyviaair.com

Counsel for the Debtor:

Justin M. Luna, Esquire

31

Latham, Luna, Eden & Beaudine, LLP
111 N. Magnolia Ave., Suite 1400
Orlando, Florida 32801
jluna@lathamluna.com

The Plan Sponsor:

Wexford Capital, LP
Wexford Plaza
411 West Putnam Avenue
Greenwich, CT 06830
aamron@wexford.com

Counsel for the Plan Sponsor

Joshua W. Wolfshohl
Porter Hedges LLP
1000 Main Street, 36th Floor
Houston, Texas 77002
jwolfshohl@porterhedges.com

United States Trustee:

George C. Young Federal Building
400 West Washington Street, Suite 1100
Orlando, Florida 32801

L.      Manner of Payment.

Any payment of Cash made under this Plan may be made either by check drawn on an account of the Plan Sponsor, the Debtor, the Reorganized Debtor or the Litigation Trust, by wire transfer, or by automated clearing house transfer from a domestic bank, at the option of the respective payor.

M.      Compliance with Tax Requirements.

In connection with this Plan, to the extent applicable, the Liquidating Trustee in making Distributions shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all Distributions pursuant to this Plan shall be subject to such withholding and reporting requirements. The Liquidating Trustee may withhold the entire

32

Distribution due to any holder of an Allowed Claim until such time as such holder provides to the Liquidating Trustee, the necessary information to comply with any withholding requirements of any governmental unit.  Any property so withheld will then be paid by the Liquidating Trustee to the appropriate authority.  If the Holder of an Allowed Claim fails to provide to the Liquidating Trustee the information necessary to comply with any withholding requirements of any governmental unit within six months after the date of first notification by the Liquidating Trustee to the holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then the Holder's Distribution shall be treated as an undeliverable distribution in accordance with the below. The payment of all taxes on all Distributions shall be the sole responsibility of the distributee.

      N.    <u>Transmittal of Distributions to Parties Entitled Thereto</u>.

      All Distributions by check shall be deemed made at the time such check is duly deposited in the United States mail, postage prepaid.  All Distributions by wire transfer shall be deemed made as of the date the Federal Reserve or other wire transfer is made.  Except as otherwise agreed with the holder of an Allowed Claim in respect thereof or as provided in this Plan, any property to be distributed on account of an Allowed Claim shall be distributed by mail upon compliance by the Holder with the provisions of this Plan to (i) its address set forth in its proof of claim, (ii) the latest mailing address filed for the holder of an Allowed Claim entitled to a distribution, (iii) the latest mailing address filed for a holder of a filed power of attorney designated by the Holder of such Allowed Claim to receive distributions, (iv) the latest mailing address filed for the Holder's transferee as identified in a filed notice served on the Debtor pursuant to Bankruptcy Rule 3001(e), or (v) if no such mailing address has been filed, the mailing address reflected on the Schedules or in the Debtor's books and records.

O.    Distribution of Unclaimed Property.

Except as otherwise provided in this Plan, any property (Cash or otherwise) to be distributed under this Plan that is unclaimed after six months following the relevant distribution date shall be forfeited, and such distribution, together with all interest earned thereon, shall become an Asset to be distributed and conveyed to Holders of Class 4 Claims in accordance with the provisions of this Plan.  However, checks issued by the Liquidating Trustee with respect to Allowed Class 4 Claims will be null and void if not cashed within sixty days of the date of issuance and such unclaimed distribution shall vest with the Middle District of Florida Bankruptcy *Pro Se* Clinic. Requests for re-issuance of any such check shall be made in writing to the Liquidating Trustee by the Holder of the Claim with respect to the check originally issued.

P.    Transfer Taxes.

Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, distribution, transfer or exchange of any security or the making, delivery, or recording of any instrument of transfer pursuant to, in implementation of, or as contemplated by the Plan or any Plan Document, or any transaction arising out of, contemplated by, or in any way related to the foregoing, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangible or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local government officials or agents shall be, and hereby are, directed to forego the collection of any such tax or governmental assessment and to accept for filing and recording any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

10399341v1

**RESPECTFULLY SUBMITTED** this 6th  day of January, 2020 in Orlando, Florida.

/s/ Daniel A. Velasquez
Justin M. Luna, Esq.
Florida Bar No. 0037131
jluna@lathamluna.com
Frank M. Wolff, Esq.
Florida Bar No. 319521
fwolff@lathamluna.com
Daniel A. Velasquez, Esq.
Florida Bar No. 0098158
dvelasquez@lathamluna.com
**LATHAM, LUNA, EDEN & BEAUDINE, LLP**
111 N. Magnolia Ave., Suite 1400
Orlando, Florida 32801
Tel: 407-481-5800
Fax: 407-481-5801
*Attorneys for the Debtor*

10399341v1